IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| LUCINNE VENEGAS, Individually and On behalf of the Estate of CARLOS JAVIER VENEGAS and on behalf of her Minor Children, D.V., G.V., and M.V<br>*Plaintiffs*<br><br>v.<br><br>SPACE EXPLORATION TECHNOLOGIES CORPORATION And DOGLEG PARK, LLC<br>*Defendants* | CIVIL ACTION NO. 1-21-CV-054 |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY, MOTION TO EXTEND DEADLINE TO FILE MOTION TO REMAND, AND MOTION TO STAY**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Defendants SPACE EXPLORATION TECHNOLOGIES CORPORATION and DOGLEG PARK, LLC, and file this Response to Plaintiff's Motion for Jurisdictional Discovery, Motion to Extend Deadline to File Motion to Remand, and Motion to Stay, and states as follows:

### I. Introduction

1.  This lawsuit arises out of an automobile accident that occurred at about 4 am on or about June 7th, 2020. Mr. Carlos Javier Venegas was driving on State Highway 4 – a highway not owned or controlled by Defendants – when he crashed into an eighteen-wheeler truck – a truck not owned, operated, or controlled by Defendants. The eighteen-wheeler truck was backing onto State Highway 4 at the time of the incident. According to the police report, Mr. Venegas had been using cocaine and had a blood alcohol level of .135 at the time of the accident, well above the legal limit of .08.

1

2.      Plaintiffs initially brought this action in the 444th Judicial District Court of Cameron County, Texas on March 15th, 2021. Defendants' counsel received a copy of Plaintiff's Original Petition on March 17th, 2021. On April 16th, 2021, Defendants filed a Notice of Removal to this Court because it has jurisdiction over the subject matter pursuant to 28 U.S.C.A. §1332. Specifically, there is complete diversity between the plaintiffs and defendants, and the amount in controversy exceeds $75,000.[1]

3.      On April 30th, 2021 Plaintiffs filed a Motion for Jurisdictional Discovery, Motion to Extend Deadline to File Motion to Remand, and Motion to Stay this matter, arguing that they need the Court to stop all other activity so they exclusively can take jurisdictional discovery to prove there is not complete diversity and that one or both Defendants are citizens of Texas.

4.      Plaintiffs have failed to identify any specific facts they need to take discovery of, and therefore have failed to meet their burden to take discovery relevant to this Court's jurisdiction. But even if the Court nonetheless decides to permit Plaintiffs to take limited jurisdictional discovery, Defendants dispute Plaintiffs' need to extend any deadlines and/or stay all other activity within this case while they do so. In support of these contentions, Defendants would offer this Court the following arguments and authorities.

## II. Arguments and Authorities

**A.      Subject Matter Jurisdiction**

5.      SpaceX removed this action on the basis of 28 U.S.C. §1332 which imbues federal courts with jurisdiction over civil actions in which the amount in controversy exceeds $75,000.00 and the plaintiffs are citizens of different states than the defendants. Plaintiffs admit that the amount in controversy requirement is met (they are seeking some $10,000,000.00). Nor do the parties

---

[1] The Plaintiffs have stated in their Original Petition that they are seeking a judgment in the amount of $10,000,000.00.

dispute that Plaintiffs are citizens of Texas. The only dispute is where Defendants have citizenship for diversity purposes.

6. Defendant Dog Leg Park is a limited liability company wholly owned by SpaceX. Accordingly, for diversity jurisdiction purposes, it has the same citizenship(s) as SpaceX. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

7. SpaceX is a corporation and as such is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). SpaceX is incorporated in Delaware and is thus a citizen of that state. The only question remaining is where SpaceX has its principal place of business.

8. The Supreme Court has unanimously endorsed the "nerve center test" for identifying the state in which a corporation has its principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). The Court concluded that "the phrase 'principal place of business' refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities," adding that "the 'nerve center' will typically be found at a corporation's headquarters." Id.

9. In their Complaint, Plaintiffs plead only that "one or more defendant [sic] resides in this county and/or maintains at least one principle place of business in Cameron County, Texas."[2] Aside from this conclusory statement, Plaintiffs did not plead any actual facts from which the citizenship of either Defendant could be ascertained, and certainly no facts that would establish that SpaceX has its nerve center in Texas.

**B.    Jurisdictional Discovery**

---

[2] This allegation is misguided in and of itself. First, it is unclear what Plaintiffs mean when they say SpaceX—a large business with operations in multiple states—"resides," and in any event, Defendants' "residence" is not relevant; only their citizenship is. Second, it is oxymoronic to suggest that a business can have more than one "principal place of business".

3

10. The party moving for jurisdictional discovery should specify "what facts they expect to discover and how that information would support jurisdiction." *Rawls v. Old Republic Gen. Ins. Grp., Inc.*, 489 F. Supp. 3d 646, 665 (S.D. Tex. 2020) citing *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 685 (S.D. Tex. 2014). Plaintiffs' motion does not specify a single fact they hope to discover. Instead, it references media articles and public statements from which it makes two assertions. First, it asserts that SpaceX's CEO and COO may reside in Texas. Second, it points to articles that discuss SpaceX's future plans in Texas to speculate that Texas has somehow already become the Company's nerve center.

11. The residences of SpaceX's CEO and CFO are not directly relevant to the question of where its nerve center is, and they certainly are not dispositive.

12. Even less relevant are the company's future plans. For instance, Plaintiffs' motion asserts that "SpaceX has moved a substantial part of its operations, decision-makers, and its employees from California to Texas ... and will continue to do so moving forward." But this assertion is based solely on a media article merely describing an email that SpaceX's CEO sent internally saying, "Please consider the top SpaceX priority (apart from anything that could reduce Dragon return risk) to be Starship." The fact that at any particular moment one facet of a company's business should be "considered the top company priority" does not render the locus of that activity the nerve center of the company. *Hertz's* clear emphasis is on where the corporation is actually controlled, not where some facilities are or will be located or where some of the corporation's operations are or will be located. See *Balachander v. AET Inc.*, 2011 WL 4500048 (S.D. Tex., 2011) citing *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

13. Their motion also blatantly mischaracterizes a Business Insider article, stating:

> Business Insider confirms that SpaceX just recently moved its manufacturing production to Austin, Texas, and is building a 'state-of-the-art manufacturing

4

facility' there. SpaceX is hiring employees for its manufacturing production in Texas, and 25% of those employees are temporarily traveling to SpaceX's California facility until the Texas facility is fully established."

What the article <u>actually</u> said was that SpaceX was "*planning* a facility in Austin" and had posted a grand total of TWO job openings for positions "that *will be based at the future* Austin location." [3] (emphasis added). The article even noted that one of the two positions would require "that applicants agree to travel to SpaceX's Los Angeles-area headquarters 25% of the time until [an] Austin facility is fully established." *Id.* In other words, the article provides literally no basis for Plaintiffs' description of it, only that SpaceX may at some future time build an apparently very small operation in Austin. Indeed, as of today, SpaceX has no facility at all in Austin.[4] Finally, Plaintiffs cite to articles and a Tweet by SpaceX's CEO about SpaceX expanding operations in Texas *in the future*.

14. Here are the actual facts *today*: SpaceX basically has two businesses. First, it designs, manufactures, and launches rockets and spacecraft to take payloads to space. The payloads can be satellites or humans and cargo (e.g., for the International Space Station (ISS)). To date, SpaceX has taken many hundreds of satellites to orbit, and it has taken many tons of cargo—and over the last year 10 astronauts—to the ISS. Its customers for these launches include NASA, the DOD, satellite operators, telecommunications providers, and foreign governments. To date, SpaceX has performed those services exclusively with its Falcon family of rockets—the Falcon 9 and the Falcon Heavy—and its Dragon spacecraft. The workhorse Falcon 9 has successfully performed 115 launches; the Falcon Heavy has successfully performed three missions. The

---

[3] https://www.businessinsider.in/thelife/news/spacex-appears-to-be-working-on-a-state-of-the-art-manufacturing-facility-in-austin-texas/articleshow/81302593.cms

[4] See Exhibit A, Declaration, attached hereto and incorporated herein by reference.

Dragon has delivered cargo and/or people to the International Space Station more than twenty times.[5]

15. SpaceX designs and manufactures its Falcon rockets and Dragon capsules at its headquarters in Hawthorne, California.[6] It tests some Falcon components at its testing facility in McGregor, Texas, and it launches them from its launch facilities in Cape Canaveral, Florida and Vandenberg Air Force Base in California.[7] While component testing in McGregor is important, it is a relatively minor aspect of this business.

16. Second, SpaceX designs, builds, launches and operates satellites. Primarily, this business involves deploying a constellation of thousands of satellites into low earth orbit, setting up ground stations around the world, selling user terminals to customers around the world, and providing high-speed broadband internet access using this network. This business is called Starlink.[8] SpaceX's Starlink-focused engineers are based in Hawthorne and Seattle. The Company manufactures user terminals in California and satellites and ground station equipment in Seattle. SpaceX uses its Falcon 9 to launch its Starlink satellites from Cape Canaveral in Florida and Vandenberg AFB in California. No significant aspect of the Starlink business is based in Texas.

17. SpaceX is currently developing a rocket called Starship. Starship is in research and development and has not yet performed an actual mission, but SpaceX has done multiple suborbital test hops of up to 10 km using prototypes of the launch vehicle's second stage. But when it is done, Starship will be the largest and most powerful rocket ever built. It is being

---

[5] This information is available at SpaceX's website: www.spacex.com.

[6] See https://www.spacex.com/mission/.

[7] See id.

[8] See https://en.wikipedia.org/wiki/Starlink.

designed to bring humans and the enormous mass of provisions they will need back to the moon and eventually to Mars.[9] Development efforts for the Starship are based largely in Boca Chica—what SpaceX refers to as Starbase—in Cameron County, Texas[10], but many SpaceX employees in other locations contribute to Starship development efforts.

18. As of May 5, 2021, SpaceX had the following numbers of employees at each of its locations:

| SpaceX Site | Approximate Numbers of SpaceX Employees Based at Site |
|---|---|
| Hawthorne, CA | 5972 |
| Starbase, TX | 1344 |
| Cape Canaveral, FL | 1107 |
| McGregor, TX | 596 |
| Seattle, WA | 554 |
| Vandenberg AFB, CA | 117 |
| Irvine, CA | 43 |
| Washington DC | 31 |
| Placentia, CA | 18 |
| Mountain View, CA | 16 |

See Exhibit A.

19. SpaceX's management team comprises a CEO, a President/COO, a CFO, 18 Vice Presidents, and 29 Senior Directors. The CEO spends most of his time in Starbase and Hawthorne. The President/COO splits her time between all SpaceX facilities but spends most of her time in McGregor and Hawthorne. The CFO is based in Hawthorne. Of the 18 Vice Presidents, 13 are based in Hawthorne, four are based in Washington DC, and one is based in SpaceX's Cape Canaveral facility. Of the 28 Senior Directors, 22 are based in Hawthorne, two are based in Washington DC, and one is based in each of Starbase, Cape Canaveral, McGregor, and Seattle. California is clearly the primary location where SpaceX is "actually controlled" and

---

[9] https://www.spacex.com/vehicles/starship/.

[10] https://www.spacex.com/mission/.

where the "nerve center" is located.

20. In addition to being where SpaceX manufactures its Falcon rockets, Dragon spacecraft, and Starlink user terminals, Hawthorne houses SpaceX's administrative functions—e.g., Finance, Human Resources, Purchasing, Supply Chain, EHS, Commercial Sales—as well as the vast majority of SpaceX's engineers.[11] In contrast, McGregor and Starbase are more operational, with workforces comprising largely skilled technical labor (e.g., welders, machinists, technicians, quality inspectors).

21. As with all discovery matters, the question whether to permit jurisdictional discovery is committed to the district court's discretion. *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 480 (W.D. Tex. 2016) citing *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir.1982). The Court need not allow jurisdictional discovery unless there are issues of fact raised. *Id.* citing *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.2000). When the lack of venue is clear, discovery would serve no purpose and should not be allowed. *Id.* citing *Sanderson v. Spectrum Labs, Inc.*, No. 00–1872, 248 F.3d 1159, 2000 WL 1909678, at *3 (7th Cir.2000). In the face of the facts presented above, Plaintiffs' plea for jurisdictional discovery based on gross mischaracterizations and wild speculation should be rejected.

C. **Expedited Discovery, a Stay of Proceedings, and an Extension of Deadline**

22. But if the Court is still inclined to permit Plaintiffs to seek jurisdictional discovery, there is no reason to essentially shut down all other aspects of the case so Plaintiffs can take such discovery while Defendants are forced to sit on their hands and the case allowed to languish.

23. As an initial matter, jurisdictional discovery should be extremely limited. As mentioned above, it is within the court's discretion to disallow or limit jurisdictional discovery, and

---

[11] As of 5 May 2021, 151 people in Starbase and 147 people in McGregor have "engineer" in their title; 1674 people in Hawthorne have engineer in their title.

8

Plaintiffs have failed to identify a single fact as to which they need discovery. Indeed, the issues they speculate about in their Motion based on their reading (or misreading) of media articles are not even relevant to the locus of SpaceX's "nerve center." In any event, whatever facts the Plaintiff might want to ascertain about the location of SpaceX's nerve center, a handful of interrogatories should suffice.

24. Second, there is no reason to extend deadlines or expedite jurisdictional discovery. The discovery Plaintiffs seek relates to subject matter jurisdiction, and they can move to remand based on a lack of subject matter jurisdiction *at any time*. *See* 28 U.S.C. § 1447(c); *see also Gonzales v. Rio Grande Plumbing Supply, Inc.*, No. CIV.A. M-04-409, 2005 U.S. Dist. LEXIS 49802, 2005 WL 1653030, at *1 (S.D. Tex. July 11, 2005) (28 U.S.C. § 1447(c) allows plaintiff to challenge subject matter jurisdiction beyond thirty days after notice of removal filed).

25. Simply put, if this Court is inclined to let Plaintiffs conduct jurisdictional discovery at all, it should direct Plaintiffs to do so in the normal course of the discovery process in this case. This will not unfairly prejudice Plaintiffs at all because they can move to remand based on a lack of subject matter jurisdiction at any time. Conversely, granting Plaintiffs' request for stays, extensions, expedited discovery—basically preventing Defendants from actively litigating at all while Plaintiffs pursue unilateral discovery—would be grossly unfair. First, it would delay resolution of this case. Here, where Plaintiffs' counsel is ginning up media attention for this case and making misleading statements about the facts, any delay to letting the legal process set the record straight is unfairly prejudicial to SpaceX. Second, Plaintiffs' proposed approach would almost certainly result in duplicative discovery efforts and discovery disputes, wasting Defendants' and the Court's time and driving up the costs of this litigation to SpaceX and needlessly adding to the Court's burden.

## III. Conclusion and Prayer

26.     As explained above, no jurisdictional discovery is warranted in this case. Plaintiffs pleaded no facts in their Original Petition that would establish that either Defendant is a citizen of Texas for diversity purposes, and their motion identifies no facts as to which they need discovery to establish this Court lacks subject matter jurisdiction. But if the Court permits Plaintiffs to take jurisdictional discovery, there is no need for such discovery to be expedited or to stay all other activity in this case or extend Plaintiffs' deadline to move to remand. Plaintiffs will suffer absolutely no prejudice from taking limited jurisdictional discovery during the normal course of litigation, while Defendants, on the other hand, would be significantly and unfairly prejudiced if the Court permitted Plaintiffs to proceed with their own discovery efforts while preventing Defendants from doing any of their own.

Accordingly, Defendants respectfully pray that the Plaintiff's Motion for Jurisdictional Discovery, Motion to Extend, and Motion to Stay be denied. Defendants further request any and all other relief to which they may be entitled.

Respectfully submitted,

**ROERIG, OLIVEIRA & FISHER, LLP**
10225 N. 10th Street
McAllen, Texas 78504
Telephone: (956) 393-6300
Facsimile: (956) 386-1625
doliveira@rofllp.com
lizg@rofllp.com
roliveirajr@rofllp.com
nancyg@rofllp.com


By: /s/ David G. Oliveira
  **DAVID G. OLIVEIRA**
  **State Bar No. 15254675**
  **RENE O. OLIVEIRA, JR.**
  **State Bar No. 24059132**
  **Federal ID No. 1005530**

**ATTORNEY FOR DEFENDANTS SPACE EXPLORATION TECHNOLOGIES CORPORATION and DOGLEG PARK, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2021 a true and correct copy of Defendants' Response to Plaintiff's Motion for Jurisdictional Discovery, Motion to Extend Deadline to File Motion to Remand, and Motion to Stay has been forwarded to all counsel of record in accordance with the applicable rules of procedure.

        */s/ David G. Oliveira*
        DAVID G. OLIVEIRA

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUCINNE VENEGAS, Individually and On behalf of the Estate of CARLOS JAVIER VENEGAS and on behalf of her Minor Children, D.V., G.V., and M.V *Plaintiffs* | § § § § § § | CIVIL ACTION NO. 1-21-CV-54 |
| v. | § § | |
| SPACE EXPLORATION TECHNOLOGIES CORPORATION And DOGLEG PARK, LLC *Defendants* | § § § § | |

## DECLARATION OF LYNETTE DHILLON

Pursuant to 28 U.S.C. §1746, I, Lynette Dhillon, declare under penalty of perjury that the following is true and correct:

1. My name is Lynette Dhillon, and I am the Human Resources Compliance Manager within the Human Resources Department at Space Exploration Technologies Corp. ("SpaceX").

2. SpaceX has two main businesses. First, it designs, manufactures, and launches rockets and spacecraft to take payloads to space. The payloads can be satellites or humans and cargo (e.g., for the International Space Station (ISS)). To date, SpaceX has taken many hundreds of satellites to orbit, and it has taken many tons of cargo—and over the last year 10 astronauts—to the ISS. Its customers for these launches include NASA, the DoD, satellite operators, telecommunications providers, and foreign governments. To date, SpaceX has performed those services exclusively with its Falcon family of rockets—the Falcon 9 and the Falcon Heavy—and its Dragon spacecraft. The workhorse Falcon 9 has successfully performed 115 launches; the Falcon Heavy has

successfully performed three missions. The Dragon has delivered cargo and/or people to the International Space Station more than twenty times.

3.     SpaceX designs and manufactures its Falcon rockets and Dragon capsules at its headquarters in Hawthorne, California. It tests some Falcon components at its testing facility in McGregor, Texas, and it launches them from its launch facilities in Cape Canaveral, Florida and Vandenberg Air Force Base in California.

4.     Second, SpaceX designs, builds, launches and operates satellites. The core of SpaceX's satellite business involves deploying a constellation of thousands of satellites into low earth orbit, setting up ground stations around the world, selling user terminals to customers around the world, and providing high-speed broadband internet access using this network. This business is called Starlink. SpaceX's Starlink-focused engineers are based in Hawthorne and Seattle. SpaceX manufactures the Starlink user terminals in California and the Starlink satellites and ground station equipment in Seattle. SpaceX uses its Falcon 9 to launch its Starlink satellites from Cape Canaveral in Florida and Vandenberg AFB in California. No significant aspect of the Starlink business is based in Texas.

5.     SpaceX is currently developing a rocket called Starship. Starship is in research and development and has not yet performed an actual mission, but SpaceX has done multiple suborbital test hops of up to 10 km using prototypes of the launch vehicle's second stage. But when it is done, Starship will be the largest and most powerful rocket ever built. It is being designed to bring humans and the enormous mass of provisions they will need back to the moon and eventually to Mars. Development efforts for the Starship are based largely in Boca Chica—what SpaceX refers to as Starbase—in Cameron County, Texas, but many SpaceX employees in other locations contribute to Starship development efforts.

6. As of May 5, 2021, SpaceX had approximately the following number of employees at each of its locations:

| SpaceX Site | Approximate Numbers of SpaceX Employees Based at Site |
|---|---|
| Hawthorne, CA | 5972 |
| Starbase, TX | 1344 |
| Cape Canaveral, FL | 1107 |
| McGregor, TX | 596 |
| Seattle, WA | 554 |
| Vandenberg AFB, CA | 117 |
| Irvine, CA | 43 |
| Washington DC | 31 |
| Placentia, CA | 18 |
| Mountain View, CA | 16 |

7. SpaceX has no operational facilities in Austin, Texas.

8. SpaceX's management team comprises a CEO, a President/COO, a CFO, 18 Vice Presidents, and 28 Senior Directors. Of the 18 Vice Presidents, 13 are based in Hawthorne, four are based in Washington DC, and one is based in SpaceX's Cape Canaveral facility. Of the 28 Senior Directors, 22 are based in Hawthorne, two are based in Washington DC, and one is based in each of Starbase, Cape Canaveral, McGregor, and Seattle.

9. SpaceX is a Delaware corporation.

10. Dogleg Park is a Delaware limited liability company that is wholly-owned by SpaceX.

I declare, under penalty of perjury, pursuant to 28 U.S.C. §1746 and the laws of the United States of America, that the foregoing is within my personal knowledge and is true and correct.

Dated: The 10th day of May, 2021.

_Lynette Dhillon_
Lynette Dhillon