IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUCINNE VENEGAS, Individually, on Behalf of the Estate of Carlos Javier Venegas and on Behalf of Her Minor Children, D.V., G.V., and M.V., | § § § § § | |
| | § | Civil Action No. 1-21-CV-54 |
| *Plaintiff,* | § § | |
| vs. | § § | |
| SPACE EXPLORATION TECHNOLOGIES CORPORATION and DOGLEG PARK, LLC, | § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFF LUCINNE VENEGAS'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT SPACE EXPLORATION TECHNOLOGIES CORPORATION**

### I. Summary of Plaintiff's Motion

- **This is a wrongful death and personal injury lawsuit arising from a crash on June 7, 2020 at 4 am at SpaceX's facilities in Boca Chica Village.**

- **This was no accident. SpaceX expanded its Boca Chica operations in 2019-2020 too quickly without implementing sufficient measures to protect the public during its massive expansion. SpaceX began using the roads around its facilities as its personal parking lot. It even hired security to patrol these streets and escort deliveries. Due to the massive expansion, semi-trucks were delivering loads around-the-clock through a narrow access point.**

- **One such delivery in the middle of the night resulted in this crash. The Venegas family could not see SpaceX's delivery vehicle stalled across Highway 4 without lighting because it could not access SpaceX's facilities.**

- **Mrs. Venegas seeks an order on Interrogatories No. 6, 8, and 12 and Requests For Production No. 1, 8-9, 11, 14, 18-19, 22-24, 32-33, 44-45, 49-52, 55, 58, 61, 63, and 65 in the attached Exhibit A.**

## II. Factual and Procedural Background

1.  This is a wrongful death and personal injury lawsuit stemming from the death of Mrs. Venegas's husband and injuries to Mrs. Venegas and her small children on June 7, 2020.[1]

2.  On the night of June 7, 2020, high tides forced the Venegas family to leave their campsite at Boca Chica Beach and return home.[2]



3.  While driving down Highway 4 between SpaceX's facilities, Plaintiff's family crashed into a semi-truck they could not see that was stalled across the road because the truck could not back into SpaceX's access point.[3] The "X" below marks the spot where the crash occurred and the "square" marks the spot where the truck was headed.



---

[1] [Dkt No. 19, para. 1]

[2] [Id. at para. 29]

[3] [Id. at para. 30-32]

4. The truck was stalled because the access point was too narrow to accommodate the semi-truck, SpaceX's security—hired to escort truck deliveries—did not show up, and the entrance had no lighting, signs, or safety precautions to warn the Venegas family of stalled trucks.[4]

5. But this was no accident. SpaceX moved to South Texas and expanded its operations too quickly.[5] This resulted in dangerous conditions on and around Highway 4, directly adjacent to SpaceX's facilities.[6] SpaceX began treating Highway 4 as its own private road and parking lot, depicted below:[7]



6. During its rapid expansion, SpaceX failed to take the necessary steps to protect the public from its unsafe around-the-clock deliveries.[8] Even recently, it has been widely reported that the Cameron County District Attorney's Office has threatened legal action against SpaceX after SpaceX began treating Highway 4 and adjoining streets as its private domain, began shutting down public roads without authorization and even re-named a public street "Rocket Road."[9]

---

[4] [Id. at para. 13-16, 20, 30-31, 36]

[5] [Id. at para. 12-14]

[6] [Id. at para. 17-18]

[7] [Id. at para. 17]

[8] [Id. at para. 18-25]

[9] www.myrgv.com/local-news/2021/06/15/cameron-county-da-spacex-may-be-violating-texas-law/
www.valleycentral.com/spacex/spacex-responds-to-da-office-letter-regarding-possible-state-law-violations/

7.  Several witnesses will testify that SpaceX hired SOS Security, LLC to patrol Highway 4 itself and tasked SOS Security with escorting and directing deliveries around-the-clock.[10] SOS Security, LLC provided around-the-clock security on Highway 4. Several witnesses are expected to testify that SpaceX treats Highway 4 like its own personal parking lot, with trucks parked along this stretch and backing into this narrow drive way around the clock.

8.  Each of the details above are pled with specificity in Plaintiff's live complaint.[11]

9.  Plaintiff served written discovery on SpaceX.[12] SpaceX refused to answer discovery regarding the conditions around their Boca Chica facilities and this access point.[13]

10. Plaintiff conferenced with SpaceX about its deficient discovery responses to no avail.[14] After conferencing by email, letter, and phone, this Motion is ripe for consideration.

### III. Argument and Authorities

A. Discovery Standard.

11. "A party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, the importance of the discovery in resolving the issues, and whether the burden of expenses of the proposed discovery outweighs its likely benefit."[15]

---

[10] [Dkt. No. 19, para. 16]

[11] [See Dkt No. 19, generally]; Plaintiff recently amended her complaint to ensure that her allegations explained in detail the relationship between SpaceX's unsafe conditions around Highway 4 and their direct connection to the death of Mrs. Venegas's husband.

[12] Exhibit A, Plaintiff Venegas's discovery requests to Defendant SpaceX.

[13] Exhibit B, Defendant SpaceX's discovery responses.

[14] Exhibit C, correspondence between the Parties relating to these disputes.

[15] *Alaniz v. United States Renal Care, Inc.,* 2018 U.S. Dist. LEXIS 232761, *2-3 (S.D. Tex., Brownsville Division Aug. 20, 2018), Hon. Rolando Olvera, quoting Fed. R. Civ. P. 26(b)(1).

12. The party moving to compel discovery bears the initial burden of showing that the information or materials sought are relevant or will lead to the discovery of admissible evidence.[16] The burden then shifts to the party opposing discovery to show why the discovery should not be permitted.[17]

**B. Mrs. Venegas's discovery requests relate directly to the allegations she contends contributed to the crash.**

13. As described above, Plaintiff pled at length that SpaceX's expansion created dangerous and unsafe conditions at the access point and roads in-and-around SpaceX's control center and launch pad. These unsafe conditions, at night and during the day, contributed to the crash in this matter.[18]

### SpaceX and State Highway 4

14. The crash in this case occurred between SpaceX's launch facility and control center. Discovery relating to the conditions where Mrs. Venegas's husband was killed and adjacent to SpaceX's facilities will shed light on SpaceX's unsafe conditions, control over these unsafe conditions, and its duties and failures to correct the unsafe conditions.

### Conditions Relating to the Access Point[19]

15. Plaintiff served discovery relating to conditions at the Access Point, where Decedent was killed. Plaintiff served three interrogatories on SpaceX:

> 6. Describe in detail any upgrades, accommodations, or security measures you have implemented in the last three years at the access point to make the access point safer.

---

[16] *Id.* (quoting *Martin v. Gilberg,* No. V-07-62, 2009 U.S. Dist. LEXIS 13268, 2009 WL 426061, at *2 (S.d. Tex. Feb 19, 2009)).

[17] *Id.* (quoting *Gomez v. Nationwide Prop. & Cas. Ins. Co.*, 2016 WL 6816215, at *2 (S.D. Tex. Feb. 26, 2016)).

[18] [Dkt No. 19, para. 17-28, 36, 40-41]

[19] The term "Access Point" is the entrance off of Highway 4 to SpaceX's control center where Mrs. Venegas's husband was killed, after a truck driver could not back his truck into the Access Point, forcing him to stall his truck in the middle of the road, at a bend in the road, in the dark of night.

8. Describe any safety measures you implemented on or before the date of the incident near the access point relating to the delivery of goods to your facilities in Boca Chica, including streetlights, street signs, cones; reflective warnings or any other safety systems to warn residents of

12. Explain your company's policy(s) and/or procedure(s) for delivering goods to your Boca Chica facilities at night in effect at the time of the Occurrence.

Plaintiff also served two requests for production relating to these allegations:

8. Any correspondence that relates to trucks accessing the access point in and around where Decedent was killed in the last five years.

32. All non-privileged correspondence relating to difficulties drivers experienced accessing the access site where Decedent was killed in the last three years.

33. All non-privileged correspondence relating to the need for lighting on State Highway 4 at or around your Boca Chica facilities. [20]

49. All documents and correspondence relating to plans for widening the access point near the site in the last three years.

16. These interrogatories and production requests seek information relating to the condition of the Access Point and the delivery of goods at this location. This information may also assist the jury in deciding (1) whether there were unsafe conditions at this location; (2) whether Defendant knew unsafe conditions existed and ignored such conditions, and (3) whether Defendant took action or failed to act to address unsafe conditions.

## SpaceX Treats Adjacent Roads as its Own Property

17. Plaintiff also served requests relating to SpaceX's control of public roads around its facilities and treatment of Highway 4 as its own private road.

9. Produce any citations, warnings, tickets letters, or other similar documents You have received from any governmental entity as a result of your operations on State Highway 4 in the last three years.

22. Non-privileged correspondence relating the public's use of State Highway 4 in the last three years.

---

[20] For RFP No. 32-33, SpaceX will not confirm in writing that it is not withholding any documents pursuant to any objection in its care, custody, and control. See Exhibit C. This makes it impossible for Plaintiff to know whether responsive documents have been withheld.

50. All correspondence and documents received and exchanged between you and the Cameron County District Attorney's office relating to the use of public roads around your Boca Chica facilities in the last three years.

51. All correspondence, photographs, and documents since 2013 relating to the naming of any street around your facility "Rocket Road."

52. All correspondence involving the group "Save RGV" in your care, custody, or control in the last three years that references the use of public streets in and around your Boca Chica facilities.

55. All correspondence to or from Shyamal Patel or his subordinates relating to the use of roads in and around your Boca Chica facilities in the last three years.

18. These requests will show what SpaceX knew, did, and failed to do that may have contributed to this crash. Request No. 50 relates to recent accusations by the Cameron County District Attorney's Office that SpaceX was treating public roads—including Highway 4 and adjoining streets around its facilities—as its own, private roads. The same is true for Request No. 51. SpaceX's unauthorized re-naming of a public road adjacent to Highway 4 at its Boca Chica facilities would support that SpaceX treated these adjoining streets as its own property.[21]

19. As to Request No. 55, SpaceX spokesperson Shyamal Patel has been communicating with the Cameron County District Attorney's Office regarding the district attorney's complaints about SpaceX's use of public roads around its Boca Chica facilities,[22] including responding to allegations from Cameron County that it was treating public roads as its own roads in violation of state law. What Mr. Patel or his subordinates discussed, internally or otherwise, could assist this jury in understanding SpaceX's control and use of adjoining roads around its facilities relevant to Plaintiff's allegations on the issues identified above.

---

[21] www.valleycentral.com/spacex/district-attorney-warns-spacex-about-unauthorized-road-closures-security-personnel/

This article reports that SpaceX renamed a street directly adjacent to Highway 4 and right next to its Boca Chica facilities as "Rocket Road," even though the road was a public road.

[22] www.portisabelsouthpadre.com/2021/07/02/spacex-responds-to-da-concerns/

20.     As to Request No. 52, "Save RGV" is a local nonprofit group that appears to have repeatedly raised concerns on behalf of the public about SpaceX's over-expansion, rate of expansion, and use of public grounds around its Boca Chica facilities.[23] What SpaceX told the local community or discussed internally about its expansion and use of these roads could directly speak to the concerns raised by Mrs. Venegas regarding SpaceX's expansion and use of public facilities that contributed to the death of her husband.

## Why This Matters

21.     This matters because if SpaceX is treating these public roads adjacent to Highway 4 and its facilities as its own, is re-naming at least one road, and is hiring private security to escort deliveries and patrol and monitor safe/unsafe conditions on these roads, SpaceX cannot now claim it had no obligation to correct unsafe conditions it created. Responsive information will also address whether SpaceX knew its operations required certain safety measures to protect the public but did not take appropriate steps to do so. SpaceX's positions prior-to and during this litigation is relevant to its credibility in now claiming it had nothing to do with these public roads and had no duty to act to correct unsafe conditions around its facilities.

22.     SpaceX cannot have it both ways. It cannot treat these roads around its facilities like its own property and then avoid responsibility altogether when the public is killed or hurt by activity occurring for SpaceX's benefit at and around SpaceX's facilities.

## SpaceX's Policies, Procedures, Plans, and Training

23.     Mrs. Venegas seeks policies and procedures that relate to the conditions and Occurrence:

> 14.     Your policies and procedures pertaining to the loading and unloading of goods at your Boca Chica facilities in the last three years.

---

[23] Id.; www.savergv.org/spacex

24. This request relates to whether SpaceX and its suppliers were enforcing and complying with SpaceX's policies and procedures leading up to this crash. Failure to do so may have contributed to this crash.

> 58. Documents and correspondence that relate to any training you provided security personnel relating to the use of public and private roads in and around your facility in the last three years.

25. SpaceX's security personnel were tasked with patrolling these roads and guiding trucks who were making deliveries.[24] What SpaceX instructed or represented to these folks may provide this jury with information relating to security's role or lack thereof in this crash.

> 61. A copy of any contract You have with SOS Security or any other third-party security company or governmental entity that provides personnel to protect or service your Boca Chica facility.

26. SpaceX's contract with SOS Security may identify duties or limitations by SpaceX and its security personnel.[25] A responsive contract(s) likely sets forth the obligations of the parties relating to the allegations pled by Plaintiff in paragraphs 15-18 and 27.

> 63. All policies, procedures, bulletins, and memos relating to the public's use of Highway 4 and surrounding streets near your Boca Chica facility in the last four years.

> 65. Provide any presentations to the public or correspondence with the public relating to the expansion at the Boca Chica facilities in the last seven years.

27. What SpaceX told their own employees, representatives and the public regarding the use of Highway 4 in the last few years is relevant to understanding SpaceX's expansion, obligations, duties to the public and its employees, and promises it made to the public.

### Other Similarly-Situated Accidents

28. Courts in this Circuit have allowed discovery into the accident history for similarly-situated events, and Plaintiff is entitled to discovery relating to crashes around SpaceX's Boca

---

[24] [Dkt No. 19, para. 16 and 18]
[25] [Dkt No. 19, para. 15-18, 27]

Chica facilities that are similarly situated to the crash at issue in this case.[26] Such information may be relevant to the "defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation."[27]

29. "For discovery purposes, the Court need only find that the circumstances surrounding the other accidents are similar enough that discovery concerning those incidents is relevant to the circumstances of the instant case."[28]

30. Plaintiff requested the following requests for production on SpaceX:

> 23. Documents and correspondence from or to SOS Security relating to any other vehicle accidents in and around your Boca Chica facility in the last three years.
>
> 24. All reports, records, correspondence or similar documentation evidencing prior or subsequent complaints, problems, injuries or security issues as a result of your operations near State Highway 4 during the past three (3) years.

31. Information relating to other accidents, complaints, and injuries near State Highway 4 relating to SpaceX's operation in the last three years is directly relevant to the alelgaitons pled, including gross negligence, because such information will address Defendant's knowledge of unsafe conditions, causation, Defendant's duties, and Defendant's ability to correct any unsafe conditions around their facilities.

---

[26] *See In re Inc. as Owner, & Aet Shipmanagement Sing. Pte. As Manager, et al,* 2018 U.S. Dist. LEXIS 239160, *129 (E.D. Tex. June 8, 2018) ("Information regarding the accident history of Kirby's vessels certainly falls within the variety of types of information which is not directly pertinent to the incident at suit but could be relevant to AET's claim for negligence.").

[27] *De Hoyos v. England*, 2016 U.S. Dist. LEXIS 198700, *11 (S.D. Tex. Apr. 19, 2016); *Librado v. M.S. Carriers, Inc.,* 2003 U.S. Dist. LEXIS 3836, at *4 (N.D. Tex. Mar. 10, 2003).

[28] *State Farm Fire & Cas. Co. v. Black & Decker, Inc.*, 2003 U.S. Dist. LEXIS 375, *11 (E.D. La. Jan. 8, 2003).

**Discovery Relating to this Occurrence**

32. SpaceX has been evasive on whether it is withholding documents pursuant to objections relating to this crash, the scene, and any subsequent investigation(s).[29] An order is needed overruling SpaceX's objections because Plaintiff has been unable to obtain assurances that objections are not being used to hide discovery for the following requests:

1. Produce any correspondence from you that references our clients, this lawsuit and/or the Occurrence prior to the date you anticipated litigation.
11. Any investigation documents and internal correspondence prepared during the regular course of business as a result of the incident made the basis of this suit.
18. Documents and correspondence showing any safety meeting you held following the occurrence relating to the occurrence.
19. Documents and correspondence showing any corrective actions you took following the occurrence.
44. All drawings, maps, and sketches of the scene of the Occurrence.
45. All photographs and videotapes of the scene of the Occurrence in the last three years.

33. These requests relate directly to this incident, any investigation, correspondence, and the scene of the crash itself. It is reasonable this information will assist the trier of fact. Defendants' objections are meritless.

**IV. Conclusion and Prayer**

34. For these reasons, Mrs. Venegas respectfully requests an order, striking Defendant's objections to the aforementioned requests and compelling production and amended responses without objections within fourteen (14) days. Time is of the essence as Plaintiff's expert deadline is quickly approaching, and this information is needed to form opinions relating to liability.

---

[29] See Exhibit C. SpaceX's conferral letter only identified the existence of documents to the extent there are additional non-objectionable documents located. This means that if responsive documents exist, SpaceX maybe holding them back pursuant to an objection.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: /s/ *David L. Bergen*
Anthony G. Buzbee
Texas Bar No. 24001820
S.D. Tex. Bar No. 22679
tbuzbee@txattorneys.com
David L. Bergen
Texas Bar No. 24097371
S.D. Tex. Bar. No. 2858355
dbergen@txattorneys.com
Brittany C. Ifejika
Texas Bar No. 241110011
S.D. Tex. Bar No. 3651372
bifejika@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

**Attorneys For Plaintiff Lucinne Venegas**

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was served by electronic-filing in compliance with the Federal Rules of Civil Procedure on or about November 12, 2021.

Michelle D. Pector
Texas Bar No. 24027726
S.D. Tex. Bar No. 28869
Michelle.pector@morganlewis.com
Jared Wilkerson
Texas Bar No. 24084096
S.D. Tex. Bar No. 2117319
Jared.wilkerson@morganlewis.com
Morgan, Lewis & Bockius, LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
Tel: 713.890-5000
Fax: 713.890.5001

David G. Oliveira
Tex. Bar No. 15254675
doliveira@rofllp.com
Rene O. Oliveira
Tex. Bar No. 24099137
roliveirajr@rofllp.com
Roerig, Oliveira & Fisher, LLP
10225 N. 10th Street
McAllen, Texas 78504
Tel: 956-393-6300
Fax: 956-386-1625

**Attorneys For Defendants**

/s/ *David L. Bergen*
David L. Bergen

## CERTIFICATE OF CONFERENCE

    I certify that I conferenced with Defendants' repeatedly by email, letter, and by telephone regarding the relief requested herein. See Exhibit C. Eventually, SpaceX ignored our communication altogether, requiring us to file this Motion with the Court.

                                                  */s/ David L. Bergen*
                                                    David L. Bergen