IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUCINNE VENEGAS, Individually, on Behalf of the Estate of Carlos Javier Venegas and on Behalf of Her Minor Children, D.V., G.V., and M.V., | § § § § § | |
| *Plaintiff,* | § § | Civil Action No. 1-21-CV-54 |
| vs. | § § | |
| SPACE EXPLORATION TECHNOLOGIES CORPORATION and DOGLEG PARK, LLC, | § § § § | |
| *Defendants.* | § § § | |

**PLAINTIFF LUCINNE VENEGAS'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By:      /s/ *Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
S.D. Tex. Bar No. 22679
tbuzbee@txattorneys.com
David L. Bergen
Texas Bar No. 24097371
S.D. Tex. Bar. No. 2858355
dbergen@txattorneys.com
Brittany C. Ifejika
Texas Bar No. 241110011
S.D. Tex. Bar No. 3651372
bifejika@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

**Attorneys For Plaintiff
Lucinne Venegas**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was served by electronic-filing in compliance with the Federal Rules of Civil Procedure on or about December 6, 2021.

Michelle D. Pector
Texas Bar No. 24027726
S.D. Tex. Bar No. 28869
Michelle.pector@morganlewis.com
Jared Wilkerson
Texas Bar No. 24084096
S.D. Tex. Bar No. 2117319
Jared.wilkerson@morganlewis.com
Morgan, Lewis & Bockius, LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
Tel: 713.890.5000
Fax: 713.890.5001

David G. Oliveira
Tex. Bar No. 15254675
doliveira@rofllp.com
Rene O. Oliveira
Tex. Bar No. 24099137
roliveirajr@rofllp.com
Roerig, Oliveira & Fisher, LLP
10225 N. 10th Street
McAllen, Texas 78504
Tel: 956-393-6300
Fax: 956-386-1625

**Attorneys For Defendants**

/s/ *David L. Bergen*
David L. Bergen

## SUMMARY OF PLAINTIFF'S RESPONSE

- **Defendants rushed to seek dismissal at the pleading stage after Mrs. Venegas moved to compel discovery and noticed the deposition of whistleblower Aldo Torres, who worked for SOS Security and responded to the crash. Defendant SpaceX had told him and others before the crash to "shut-up," after warning SpaceX that the access point was dangerous and could lead to someone being killed unless changes were made. Mr. Venegas was killed as predicted.**

- **Defendants unnecessarily disparaged the Venegas family by claiming that the Complaint is "written like a disjointed letter to the editor" and the crash was the result of a long night of partying, drugs and alcohol with three small children. Defendants interjected these false allegations outside the Complaint to sully Mrs. Venegas's reputation and influence this Honorable Court.**

- **But by including facts and evidence to the Motion and contemporaneously-filed motion to stay found nowhere in Mrs. Venegas's complaint, Defendants invite this Court to convert the Motion to Dismiss to one for summary judgment because it requires this Court to consider information outside the Complaint. The Motion thus warrants a reasonable opportunity for discovery, but Defendants are purposefully attempting to avoid that discovery.**

- **Defendants argue they owed no duty to the Venegas family because the crash had nothing to do with them and occurred on a public highway they never owned and/or controlled. Defendants are demonstrably wrong. Texas law imposes a duty on Defendants for three reasons:**

  - **First, Texas law imposes a duty on a party that controls real property, even when a party does not own or occupy the property.**

  - **Second, Texas law imposes a duty when unsafe conditions on a party's property endanger a person traveling on an abutting public road.**

  - **Lastly, two exceptions impose a duty where one would otherwise not exist when a party agrees to make-safe a known, unsafe condition or creates an unsafe condition on property it neither owns nor controls.**

- **Mrs. Venegas pled facts sufficient to show that all three circumstances apply.**

# TABLE OF CONTENTS

Summary of Plaintiff's Response ........................................................................iii.

Table of Contents ........................................................................................iv.

Table of Authorities.....................................................................................vi.

Memorandum ..............................................................................................1

I.     Factual and Procedural Background.........................................................1

       A.     Summary of the Crash on June 7, 2020................................................1

       B.     Defendants Controlled The Area Where The Crash Occurred ..............................2

       C.     Defendants' Expansion Resulted in Unsafe Conditions That Were Ignored..........3

       D.     Mrs. Venegas Sued, And Defendants Filed This Motion to Avoid Discovery ......4

II.    Legal Standard of Review ....................................................................5

       A.     The Standard For a Rule 12(c) Motion For Judgment on the Pleadings................5

       B.     The Standard For a Rule 12(b)(6) Motion to Dismiss For Failure to State a Claim6

       C.     A Rule 12 Motion Is Converted To One For Summary Judgment If Matters Outside The Pleadings Are Presented And Not Excluded By The Court............................7

III.   Argument and Authorities ....................................................................8

       A.     The Motion Should Be Construed As One For Summary Judgment Because It Presents Facts Outside Mrs. Venegas's Complaint................................8

              i. Defendants' narrative and evidence invite this Court to consider matters outside the Complaint ................................................................8

              ii. The Motion warrants a reasonable opportunity for discovery, and Defendants are purposefully attempting to avoid that discovery ...................................11

       B.     A Duty Existed Because Defendants Controlled The Property Where The Crash Occurred ................................................................12

              i. The general rule is that a party has a duty to make safe conditions on property it either owns or controls ................................................................13

              ii. Defendants controlled the property where the crash occurred, and therefore, Defendants owed Plaintiff's family a duty of care ................................14

       C.     A Duty Existed When Unsafe Conditions On Defendants' Property Contributed To The Crash On SH 4 ................................................................16

              i. A party has a duty to ensure its property does not endanger the public using an abutting highway ................................................................16

              ii. *McKnight v. Calvert* illustrates this Rule clearly ............................17

iii. Unsafe conditions on Defendants' abutting property endangered the Venegas family traveling on a public road sufficient to impose a duty of care ................. 18

D.    Two Exceptions Apply that Impose A Duty on Defendants Where One Otherwise Would Not Exist ................................................................................................... 20

i. A party owes a duty when a party agrees to make safe known, unsafe conditions or creates unsafe conditions on property it neither owns nor controls ................. 20

ii. Mrs. Venegas pled a plausible claim to support both exceptions .................... 21

E.    Defendants Owed The Venegas Family A Duty Of Care Owed To A Licensee .. 22

F.    Mrs. Venegas Pled A Plausible Respondeat Superior Claim ............................... 23

i. Respondeat Superior applies to the negligent conduct of agents or employees and is not limited only to employees as Defendants suggest ....................................... 23

ii. Defendants controlled their agents sufficient to support a respondeat superior claim .................................................................................................................... 24

IV.    Conclusion ................................................................................................................ 25

### TABLE OF AUTHORITIES

**I. CASES**

*Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908 (Tex. 1981)................................................13, 16, 23

*Allen Keller Co. v. Foreman*, 343 S.W.3d 420 (Tex. 2011)...........................................................13

*Atchison v. Texas & P.R. Co.*, 143 Tex. 466 (Tex. 1945) .............................................................16

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ................................................................................7

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007) ..........................................6-7

*Bonin v. Sabine River Auth. Of Tex.*, 2021 U.S. Dist. LEXIS 124798 (E.D. Tex. May 7, 2021) ................................................................................................................................................6-7, 11

*Butcher v. Scott,* 906 S.W.2d 14 (Tex. 1995).................................................................................13

*Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285 (5th Cir. 2004).....................................7

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548 (1986)...................................................11

*City of Austin v. Credeur,* 2021 Tex.App. LEXIS 1083 (Tex.App.—Austin Feb. 11, 2021, no pet.) ..................................................................................................................................................22

*City of Denton v. Page,* 701 S.W.2d 831, 835 (Tex. 1986).........................................13, 16, 19-20

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) .........................................7

*Cty. Of Cameron v. Brown,* 80 S.W.3d 549 (Tex. 2002) ..............................................................13

*Doe v. MySpace, Inc.,* 528 F.3d 413 (5th Cir. 2008).......................................................................6

*Fort Bend Cty, Drainage Dist. v. Sbrusch,* 818 S.W.2d 392 (Tex. 1991)....................................20

*Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211 (Tex. 2008) ...............................................................13

*Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins,* 926 S.W.2d 287 (Tex. 1996) ................................................................................................................................................24

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 313 (5th Cir. 2002). .....7

*Greenberg v. General Mills Fund Group, Inc.*, 478 F.2d 254 (5th Cir. 1973) ...............................5

*Gundolf v. Massman-Johnson,* 484 S.W.2d 555 (Tex. 1972). ......................................................20

*Hirabayashi v. North Main Bar-B-Q,* 977 S.W.2d 704 (Tex.App.—Fort Worth, June 11, 1998, no pet.) .......................................................................................................................................13, 19-20

*Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74 (5th Cir. 1990)..............................6

*In re Katrina Canal Breaches Litig.,* 495 F.3d 191 (5th Cir. 2007).................................................7

*In re TPCO Am. Corp.,* 2018 Tex. App. LEXIS 2566 (Tex.App.—Corpus Christi-Edinburg Apr. 11, 2018, no pet.)................................................................................................13, 16, 19-20

*Johnson v. PPI Tech. Servs., L.P.*, 2012 U.S. Dist. LEXIS 104798 (E.D. La. July 27, 2012)..7, 10

vi

*Juarez v. Brownsville Indep. Sch. Dist.,* 2010 U.S. Dist. LEXIS 40098 (S.D. Tex.—Brownville Apr. 23, 2010) ..................................................................................................................6-7, 11

*Lefmark Mgmt. Co. v. Old,* 946 S.W.2d 52 (Tex. 1997) .......................................................20

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLLC*, 594 F.3d 383 (5th Cir. 2010) .................6

*McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992) ........................................................7

*McKnight v. Calvert,* 539 S.W.3d 447 (Tex.App.—Houston [1st Dist.] 2017, no pet.)..........16-17

*Moore & Savage v. Koppin,* 135 S.W. 1033 (Tex. Civ. App. 1911, writ ref'd) ...........................24

*Nall v. Plunkett,* 404 S.W.3d 552, 555 (Tex. 2013) .................................................................20

*Nat'l Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137 (5th Cir. 2007) ..................................7

*Osuna v. S. Pac. R.R.,* 641 S.W.2d 229 (Tex. 1982)................................................................21

*Ponder v. Morrison-Knudsen Co.*, 685 F. Supp. 1359 (E.D. Tex. 1988) ....................................24

*Pullen v. Farmers Group,* 2006 U.S. Dist. LEXIS 112547 (S.D. Tex.—Brownsville Division Mar. 27, 2006)................................................................................................................6, 8, 11-12

*Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex. 1985) .............................................................24

*Saudi Arabia v. Nelson*, 507 U.S. 349, 351, 113 S. Ct. 1471 (1993) .............................................6

*Samson v. Univ. of Tex. at Austin,* 500 S.W.3d 380 (Tex. 2016).................................................22

*Spivey v. Robertson,* 197 F.3d 772 (5th Cir. 1999) .....................................................................6

*St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513 (Tex. 2002)...............................................................23

*UDR Tex. Props., L.P. v. Petrie,* 517 S.W.3d 98 (Tex. 2017) ....................................................13

*United Scaffolding, Inc. v. Levine,* 537 S.W.3d 463 (Tex. 2017) ..........................................13, 22

*Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887 (5th Cir. 1998)....................5-6

*Waller v. Hanlon,* 922 F.3d 590 (5th Cir. 2019) .........................................................................6

*Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322 (Tex. 1993) ...............................................20

*Western Invs., Inc. v. Urena,* 162 S.W.3d 547 (Tex. 2005) .......................................................22

## II. RULES

Fed. R. Civ. P. 8 .......................................................................................................................14

Fed. R. Civ. P. 12 ..................................................................................................................5-7, 11

Fed. R. Civ. P. 56 .......................................................................................................................7

**PLAINTIFF LUCINNE VENEGAS'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Lucinne Venegas ("Mrs. Venegas" or "Plaintiff") files this Memorandum of Law in Response to Defendant Space Exploration Technologies Corporation ("SpaceX") and Dogleg Park, LLC" ("Dogleg") (collectively "Defendants") Motion to Dismiss.[1] In support, Mrs. Venegas respectfully shows this Court the following:

## I.   Factual and Procedural Background

**A.   Summary of the Crash that Occurred on June 7, 2020.**

Mrs. Venegas is a resident of Cameron County, Texas.[2] She was married to the decedent, Mr. Carlos Venegas.[3] Together, they had three children D.V., G.V., and M.V.[4]

On the night of June 6, 2020, the Venegas family was camping at Boca Chica Beach.[5] At 4:00 a.m. on June 7, 2020, the tide rose more than the Venegas's had anticipated, so they elected to return home rather than relocate their campsite.[6] The family thus left the campground and proceeded down State Highway 4 ("SH 4"),[7] which abuts Defendants' property on both sides at various points.[8] The Venegas family crashed into a truck stalled across SH 4.[9] The truck driver admitted he was stalled because it was too dark to see where he was going and he could not safely backup.[10]

The crash killed Mr. Venegas and severely injured Mrs. Venegas and her three children.[11]

---

[1] [Dkt No 22]

[2] [Dkt No 19, ¶2]

[3] [Id. at ¶1]

[4] [Id. at ¶5]

[5] [Id. at ¶29]

[6] [Id.]

[7] [Id. at ¶30]

[8] [Id. at ¶11, seq.]

[9] [Id. at ¶30-31]

[10] [Id. at ¶35]

[11] [Id. at ¶33]

**B.   Defendants Controlled the Area Where the Crash Occurred.**

The crash occurred at the entrance to SpaceX's launch control center at the corners of SH 4 and what was referred to as LBJ Boulevard,[12] which is now a private road to SpaceX's facilities after Defendants bought-out Boca Chica village.[13] Mrs. Venegas refers to this location throughout her pleading as the "site" or "access point."

The lawsuit alleges with precision that Defendants "operated and controlled" this access point[14] as well as the stretch of SH 4 and surrounding streets adjacent to Defendants' Boca Chica facilities.[15] Defendants employed their own security personnel, contract security personnel, and off-duty officers with the Cameron County Sheriff's Department.[16] Defendant SpaceX's security force supervised these personnel.[17]

These servants and agents were tasked by Defendants with: (1) patrolling its facilities, the access point, the portion of SH 4 referenced above, and surrounding public streets adjacent to their Boca Chica facilities;[18] (2) monitoring, directing and controlling traffic at these areas;[19] (3) communicating with delivery drivers delivering goods to Defendants at these areas;[20] (4) controlling around-the-clock deliveries;[21] (5) assisting delivery drivers with parking, relocating, and delivering

---

[12] [Id. at ¶11, seq.]

[13] [Id. at ¶9, 21]

[14] [Id. at ¶11, seq.]

[15] [Id. at ¶15, seq.]

[16] [Id. at ¶15-28]

[17] [Id. at ¶15, 42-44]

[18] [Id. at ¶15]

[19] [Id. at ¶16]

[20] [Id.]

[21] [Id.]

goods;[22] and (6) escorting deliveries along SH 4 to SpaceX's facilities.[23] This work was performed hourly.[24]

Defendants' control was so extensive that they began treating that stretch of SH 4 and surrounding streets as if it were their personal property;[25] Defendants even renamed—without permission—an abutting public street "Rocket Road."[26] The gist of these allegations is that the surrounding streets, access point, and SH 4 were not treated as public in-use, but rather, Defendants treated these roads as part of their own facilities and used them as an extension of their commercial operations.[27]

Discovery will show that the nature of Defendants' business, its relationship to the federal government, and the unique location of these areas make Defendants' control unprecedented to the operations of most commercial enterprises. Discovery will further demonstrate that conditions on SpaceX's own property, to include lack of capacity and insufficient access points, that contributed to the back-up in traffic, creating a virtual parking lot on what was once a public thoroughfare.

**C. Defendants' Expansion Resulted in Unsafe Conditions That Were Ignored.**

Defendants' Boca Chica expansion in 2019-2020 created unsafe conditions on the property Defendants controlled. These conditions did not exist beforehand.[28]

The expansion resulted in a massive uptick in traffic around-the-clock by trucks delivering goods to Defendants.[29] Deliveries occurred at such a rate that trucks were parking in long lines on

---

[22] [Id. at ¶18]

[23] [Id.]

[24] [Id. at ¶17]

[25] [Id.]

[26] [Id.]

[27] [Id. at ¶21]

[28] [Id. at ¶11-14]

[29] [Id. at ¶14]

both sides of SH 4, waiting to deliver products to Defendants.[30] Defendants simply did not have enough access points and sufficient access points to compensate for the known capacity.

As stated, the access point and SH 4 and its surrounding streets were not equipped to handle the size and number of commercial deliveries around-the-clock.[31] Without alterations, the access point was too narrow[32] to accommodate trucks, particularly at night.[33] Drivers also could not safely maneuver (backwards) through this access point without an escort, traffic monitoring, lights, warnings, and signage.[34] This lack of capacity both on the public highway and Defendants' public property resulted in commercial trucks blocking SH 4 while attempting to access SpaceX's facilities.[35] This is precisely the condition that caused the crash in this case.[36]

Defendants knew the conditions on property it controlled were unsafe because its contractors and employees notified them of the unsafe conditions.[37] When warned of the danger, Defendants told their servants and/or employees to "shut-up about it."[38]

**D. Mrs. Venegas Sued, and Defendants Filed This Motion After Refusing to Engage in Discovery.**

On March 15, 2021, Mrs. Venegas sued Defendants for negligence and gross negligence.[39] Both Defendants own the Boca Chica property and control the property where the crash occurred,[40]

---

[30] [Id. at ¶18]

[31] [Id. at ¶24]

[32] [Id. at ¶20]

[33] [Id. at ¶20-28]

[34] [Id.]

[35] [Id. at ¶24-25]

[36] [Id. at ¶30-32]

[37] [Id. at ¶27]

[38] [Id. at ¶27]

[39] [Dkt No. 1-1, p. 5]

[40] [Id. at ¶ 3-4, 37-41]

and Mrs. Venegas alleges the same facts and claims against both Defendants.[41] Defendants removed the case to federal court.[42] On June 8, 2021, this Court entered a scheduling order.[43] On August 5, 2021, Mrs. Venegas served highly specific discovery on SpaceX,[44] to which SpaceX refused to respond.[45]

After Defendants promised yet failed to amend and properly answer discovery,[46] Mrs. Venegas filed a motion to compel,[47] and noticed the deposition of former SOS Security official and whistleblower Aldo Torres for December 2, 2021.[48] One business day after Mrs. Venegas filed her motion to compel, Defendants filed this Motion to Dismiss. For the reasons that follow, this Motion should be denied.

## II.   Legal Standard of Review

### A.   The Standard for a Rule 12(c) Motion for Judgement on the Pleadings.

Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial.[49] A Rule 12(c) is treated similarly to a motion for summary judgment as judgement should "only be granted if there is no issue of material fact and if the pleadings show that the moving party is entitle to prevail as a matter of law."[50]

---

[41] [Id. at ¶ 37-41] Defendants falsely claim that Mrs. Venegas has not alleged any claims against Dogleg. But a cursory review of the live complaint make clear that both Defendants owned the property and identical facts and claims are alleged against both Defendants.

[42] [Dkt No. 1]

[43] [Dkt No. 11]

[44] [Dkt No. 21, Exh. A]

[45] [Dkt No. 21, Exh. B]

[46] [Dkt No. 21, Exh. C]

[47] [Dkt No. 21]

[48] [Dkt No. 20]

[49] Fed. R. Civ. P. 12(c).

[50] *Pullen v. Farmers Group,* 2006 U.S. Dist. LEXIS 112547, *6 (S.D. Tex.—Brownsville Division Mar. 27, 2006), Hon. Hilda G. Tagle presiding (citing *Greenberg v. General Mills Fund Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973)).

The Court is limited in a Rule 12(c) motion to analyzing the facts pled in the complaint, and should assume the facts in the live complaint are true when the parties have not yet conducted discovery.[51] Therefore, a Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[52]

**B. The Standard for a Rule 12(b)(6) Motion to Dismiss.**

The difference between a Rule 12(c) motion and a Rule 12(b)(6) motion is that a Rule 12(c) motion addresses the circumstance where the material facts are not in dispute and judgment can be determined by taking the facts in the complaint as true, while a Rule 12(b)(6) motion is intended to address a complaint that fails to allege "enough facts to state a claim to relief that is plausible on its face."[53]

"A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[54] This is accomplished when the complaint "raise[s] a right to relief above the speculative level" that "nudges the claims across the line from conceivable to plausible."[55] The court "should not evaluate the plaintiff's likelihood of success."[56]

---

[51] *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 351, 113 S. Ct. 1471 (1993)).

[52] *Voest-Alpine Trading USA Corp.*, 142 F.3d at 891 and *Bonin v. Sabine River Auth. Of Tex.*, 2021 U.S. Dist. LEXIS 124798, *7 (E.D. Tex. May 7, 2021) (both quoting *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

[53] *Bonin*, 2021 U.S. Dist. LEXIS 124798 at *8 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, (2007)), *Juarez v. Brownsville Indep. Sch. Dist.*, 2010 U.S. Dist. LEXIS 40098, *12-13 (S.D. Tex.—Brownville Apr. 23, 2010), Hon. Andrew Hanen (citing Fed. R. Civ. P. 12(b)(6) and *Nat'l Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007)).

[54] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)).

[55] *Middaugh v. Interbank*, 2021 U.S. Dist. LEXIS 55800, *11-12 (N.D. Tex. Feb. 5, 2021).

[56] *Bonin*, 2021 U.S. Dist. LEXIS 124798 at *8 (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

A court applies the same standard when ruling on a motion for judgment on the pleadings under Rule 12(c) as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[57] "The court cannot look beyond the pleadings."[58] "The pleadings include the complaint and any documents attached to it."[59] A court must accept as true all allegations in the complaint,[60] viewing them in the light most favorable to the plaintiff.[61]

## C. A Rule 12 Motion Is Converted to One for Summary Judgment if Matters Outside the Pleadings Are Presented and Not Excluded by The Court.

Motions under Rule 12(c) and Rule 12(b)(6) should be treated as one for summary judgment and disposed of as provided in Rule 56 if matters outside the pleadings are presented and are not excluded by the court.[62] Matters beyond the pleadings include any evidence introduced in support of or in opposition to the motion to dismiss that does not merely reiterate what is said in the pleadings.[63]

There are two exceptions. First, ***uncontested*** documents referred to in the pleadings may be considered by the court without converting the motion to one for summary judgment even when not attached to the complaint.[64] Second, a court also may consider documents attached to a motion to

---

[57] *Bonin*, 2021 U.S. Dist. LEXIS 124798 at *8 (quoting *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008) and *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)).

[58] *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999).

[59] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

[60] *Twombly*, 550 U.S. at 555.

[61] *Bonin*, 2021 U.S. Dist. LEXIS 124798 at *8 (quoting *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007)).

[62] *Pullen,* 2006 U.S. Dist. LEXIS 112547 at *6; *Juarez,* 2010 U.S. Dist. LEXIS 40098 at *12 (quoting Fed. R. Civ. P. 12(d)); *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996) (quoting *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992))

[63] *Johnson v. PPI Tech. Servs., L.P.*, 2012 U.S. Dist. LEXIS 104798, at *4, n. 9 (E.D. La. July 27, 2012) (quoting 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1366 (3d ed.)).

[64] *See Johnson*, 2012 U.S. Dist. LEXIS 104798 at *4, n. 9 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002))

dismiss without converting it to a summary judgment motion if the documents are ***referred to in the complaint*** and are central to the plaintiff's claim.[65]

It is reversible error for a court to adopt portions of a defendants' allegations as fact without acknowledging contradictions between the facts identified by a defendant and those pled in a complaint.[66]

In this case, as will be shown below, Defendants' Motion should be converted to one for summary judgment.

### III.   Argument and Authorities

**A.   The Motion Should Be Construed as One for Summary Judgment Because It Presents Facts Outside Mrs. Venegas's Complaint.**

**i.   Defendants' narrative and evidence invite this Court to consider matters outside the Complaint.**

Defendants make no attempt to accept as true all allegations in Mrs. Venegas's Complaint and view them in the light most favorable to Mrs. Venegas. Instead, Defendants offer a narrative that contradicts every fact in Mrs. Venegas's Complaint, including the following facts offered up without any support by the Defendants:

- The crash occurred after a night of drinking and partying [Motion, p. 1];
- Plaintiff "was not forthcoming" (suggesting she lied) about these facts and cites to the Texas Department of Transportation's crash report [Id., p. 1, fn 1];
- Mr. Venegas was speeding [Id., p. 1];
- Mr. and Mrs. Venegas were not wearing seatbelts [Id., p. 1];
- Mr. Venegas was drunk and high [Id., p. 1];
- Defendants had no connection to the accident [Id., p. 1-3];
- None of their employees were involved [Id., p. 1];

---

[65] *Johnson*, 2012 U.S. Dist. LEXIS 104798 at \*5 (quoting *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

[66] *Putnal*, 75 F.3d at 197 ("In effect, the trial court adopted portions of the defendants' claims as fact without acknowledging any contradiction with the complaint . . . Dismissal under these circumstances was error.").

- None of their vehicles were involved [Id., p. 1];

- The accident did not occur on property owned, controlled or occupied by Defendants [Id., p. 1];

- Mrs. Venegas did not allege that Defendants controlled the area where the accident occurred [Id., p. 2];

- The Venegas family crashed into a truck owned by a third-party SYM Trucking, LLC and driven by Yandi Treto [Id., p. 1];

- The proper defendants are SYM Trucking and driver Treto because they were at fault [Id., p. 2];

- Plaintiff admitted SYM Trucking and Treto caused the crash [Id., p. 2, 6];

- Plaintiff settled with SYM Trucking and driver Treto [Id., p. 2];

- Plaintiff made allegations against SYM Trucking and Treto that are contradicted by its statements in this case [Id., p. 2-4];

- This was an accident between two vehicles on an empty public road [Id., p. 3];

- The access point is "some distance from the entrance to SpaceX" [Id., p. 4];

- LBJ Boulevard and SH 4 are owned by the State of Texas and Cameron County [Id., p. 4];

- SpaceX and Dogleg's employees were not involved in the accident itself [Id., p. 5]; and

- SOS Security, LLC is an independent contractor [Id., p. 17].

Defendants invite this Court to consider their alternative narrative. But their "facts" directly contradict and include matters far-outside Mrs. Venegas's Complaint. No exception allows this Court to accept these facts and attached evidence without converting the motion to one for summary judgment because most of these alleged facts are either not referred to in the live Complaint or are contested by the Venegas family.

Defendants also attached Exhibit A and B, which include matters found nowhere in Mrs. Venegas's live Complaint. Defendants claim Exhibit A—is entitled First Original Petition— appears to be a post-settlement friendly suit intended to seek the appointment of a guardian ad litem filed by another law firm. Exhibit B appears to be a motion to enforce an out-of-court, pre-suit settlement between Plaintiff and two third parties.

9

Both Exhibits A and B are irrelevant to Defendants' Motion to Dismiss unless this Court converts this Motion to one for summary judgment, because Defendants' facts are disputed and are found nowhere in Plaintiff's pleading.

Defendants, however, also filed four exhibits with their contemporaneously filed Motion to Stay Discovery that are only relevant to their Motion to Dismiss. Defendants attached the evidence to their separately filed Motion to Stay in an attempt to support their dismissal claims but avoid converting this Motion to one for summary judgment by attaching evidence outside Mrs. Venegas's Complaint.[67] In other words, the clear intent of attaching Exhibits 1-4 to the Motion to Stay was to present evidence to this Court to support Defendants' version of events in their Motion to Dismiss while trying to avoid converting this Motion to one for summary judgment, requiring discovery.[68] But by doing so, Defendants again invite this Court to convert this Motion to one for summary judgment.

Defendants claim this Court can take judicial notice of Exhibits A and B,[69] but that is untrue because this Court can only take judicial notice of undisputed documents and those referred to in Mrs. Venegas's Complaint.[70] Neither exception applies.

In *Pullen v. Farmers Group*, Judge Hilda Tagle examined whether a Rule 12(c) motion should be converted to one for summary judgment after the defendant attached seven exhibits, including state court petitions, orders, notices, and a release between the plaintiffs and the

---

[67] [Dkt No. 23-1 through 23-4]. Exhibit 1 is an alleged first amended original petition in a Harris County case involving two third parties found nowhere in Mrs. Venegas's lawsuit; Exhibit 2 is a motion to enforce settlement in that same lawsuit; Exhibit 3 is an alleged police report Defendants repeatedly reference in their motion to dismiss; and Exhibit 4 is a confidential settlement release identified in Defendants' Motion to Dismiss.

[68] For example, an alleged and contested confidential settlement release attached to the stay had nothing to do with the stay and everything to do with the allegations describing the settlement in the motion to dismiss. This evidences that Defendants know they are circumventing the Rule 12(b)(6) framework.

[69] [Motion, p. 4, fn. 5]

[70] *Johnson*, 2012 U.S. Dist. LEXIS 104798 at *5 (quoting *Causey*, 394 F.3d at 288 and 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1366 (3d ed.)).

defendants.[71] The consideration of information outside the plaintiff's pleading was enough to convert the motion to one for summary judgment.[72]

Likewise, in *Bonin v. Sabine River Authority of Texas,* the court acknowledged that a federal court may take judicial notice of public records without converting the motion to one for summary judgment so long as the consideration of such documents does not require the Court to look beyond the complaint itself.[73] Judge Hawthorn examined the case at hand and a prior ruling of his in concluding that a motion to dismiss should be converted to one for summary judgement when there is a "need to look beyond the complaint itself and its attachments in deciding the motion."[74]

Similarly, Defendants' Motion should be converted to one for summary judgment because Defendants are not entitled to the relief they seek if this Court looks beyond Mrs. Venegas's Complaint or relies on any alleged facts or evidence cited to in Defendants' Motion to Dismiss and contemporaneously filed Motion to Stay, because such matters are contested by Mrs. Venegas and mentioned nowhere in her Complaint.

### ii. The Motion to Dismiss now warrants a reasonable opportunity for discovery, and Defendants are purposefully attempting to avoid such.

When a motion under Rule 12(c) or 12(b)(6) is converted to one for summary judgment, all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion.[75] Indeed, the United States Supreme Court has long recognized that the granting of a summary judgment motion can only occur "after adequate time for discovery."[76]

---

[71] *Pullen,* 2006 U.S. Dist. LEXIS 112547 at *6-7.

[72] *Id.* at *7.

[73] *Bonin,* 2021 U.S. Dist. LEXIS 124798, *9, fn 3-4.

[74] *Id.* at *9, fn. 4.

[75] Fed. R. Civ. P. 12(d); *Pullen,* 2006 U.S. Dist. LEXIS 112547 at *6 (citing Fed. R. Civ. P. 12(c)), *Juarez,* 2010 U.S. Dist. LEXIS 40098 at *12 ("The Court in doing so gave all parties additional time to review pleadings and to submit summary judgment proof"); *Bonin*, 2021 U.S. Dist. LEXIS 124798 at *9, fn. 3-4; *Juarez,* 2010 U.S. Dist. LEXIS 40098 at 12 (allowing plaintiff to amend petition and obtain summary judgment proof).

[76] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548 (1986)).

In this case, a reasonable time for discovery has not elapsed. The timing of this Motion is no accident. It was brought when Plaintiff attempted to obtain written discovery and deposition testimony on the issues in the Motion—discovery Defendants improperly seek to prevent.

Defendants refused to answer written discovery on the facts disputed in this Motion. Plaintiff timely served written discovery on SpaceX,[77] but SpaceX refused to respond and answer discovery, necessitating Plaintiff's Motion to Compel Discovery one day before Defendants filed this Motion.[78] Defendants also refuse to allow depositions and filed this Motion immediately after Plaintiff noticed the deposition of a whistleblower who responded to the crash and was working for SpaceX at the time.[79] Because of a lack of discovery, Plaintiff is unable to disclose experts, scheduled for January 7, 2022.[80]

Plaintiff requests this Court stay the ruling on this Motion, lift discovery, and allow the Parties to meaningfully engage in discovery before the presentation of this Motion to the Court.

**B. A Duty Existed Because Defendants Controlled the Property Where the Crash Occurred.**

Defendants claim Texas law entitles them to dismissal because Defendants can only owe a duty of care if they own the public road where the crash occurred, and because they did not own the road, they owed Plaintiff no duty to prevent the crash. This claim is meritless.

A duty of care exists if any one of three reasons described below apply; as will be shown, all three apply. First, a duty exists if Defendants controlled the property where the crash occurred, regardless of whether they owned or occupied the property. Second, a duty exists if Defendants' property itself created unsafe conditions on abutting SH 4 that contributed to the crash. Third, even

---

[77] [Dkt No. 21, Exh. A]

[78] [Id., Exh. B and C]

[79] [Dkt No. 20]

[80] [Dkt No. 11]

if none of these factors apply—which they do—two exceptions impose a duty when Defendants agree to make safe a known, unsafe condition on SH 4 or create the unsafe conditions on SH 4 that caused the crash.

Mrs. Venegas pled facts sufficient to allege that all of these conditions apply, requiring the denial of Defendants' Motion to Dismiss.

### i.  The <u>general rule</u> is that a party has a duty to make safe conditions on property it either owns or controls.

"Whether a duty exists is a question of law for the court, and the presence of an unreasonably dangerous condition weights in favor of recognizing a duty."[81]

The Texas Supreme Court has articulated the general rule that "an owner or occupier of property has a duty to use reasonable care to keep the premises under its **<u>control</u>** in a safe condition."[82] <u>This duty extends to land "controlled" by a defendant even if the defendant "does not own or physically occupy the property.</u>"[83] On the other hand, a person cannot be held liable for dangerous conditions on property the person "does not own, occupy, or otherwise control."[84]

The relevant inquiry is "whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy

---

[81] *Allen Keller Co. v. Foreman,* 343 S.W.3d 420, 425 (Tex. 2011). See also *In re TPCO Am. Corp.,* 2018 Tex. App. LEXIS 2566, *10 (Tex.App.—Corpus Christi-Edinburg Apr. 11, 2018, no pet.) (quoting *UDR Tex. Props., L.P. v. Petrie,* 517 S.W.3d 98, 101 (Tex. 2017)) (Courts also consider the "social utility of the actor's conduct, the consequences of imposing the burden on the actor, and any other relevant competing individual and social interests implicated by the facts of the case.").

[82] *In re TPCO Am. Corp.,* 2018 Tex. App. LEXIS 2566 at *10 (quoting *United Scaffolding, Inc. v. Levine,* 537 S.W.3d 463, 473 (Tex. 2017) ("Thus, the duty to make the premises safe or warn of dangerous conditions generally runs with the ownership **_or_** control of the property, and a defendant's liability under a premises liability theory rest on the defendant's assumption of control of the premises and responsibility for dangerous conditions on it.").

[83] *Id.* (quoting *Cty. Of Cameron v. Brown,* 80 S.W.3d 549, 556 (Tex. 2002)).

[84] *Hirabayashi v. North Main Bar-B-Q,* 977 S.W.2d 704, 706 (Tex.App.—Fort Worth, June 11, 1998, no pet.) (quoting *City of Denton v. Page,* 701 S.W.2d 831, 835 (Tex. 1986)); *In re TPCO Am. Corp.,* 2018 Tex. App. LEXIS 2566 at *11 (quoting *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex. 1981)).

it."[85] Control may be "expressed by contract **or** implied by conduct."[86] "Physical possession does not equate to the right to control the premises; one can exist without the other."[87]

Therefore, if a party controls property where an injury occurs—even if the party does not own or physically occupy the property—the party has a duty to keep the property safe and the analysis ends here.[88]

### ii. Defendants controlled the property where the crash occurred, and therefore, Defendants owed her family a duty of care.

Mrs. Venegas pled much more than a "short and plain statement" under Federal Rule of Civil Procedure 8 sufficient to place Defendants on notice that Mrs. Venegas was plausibly claiming that Defendants controlled the property where the crash occurred.

Mrs. Venegas began her description of "control" by explaining in-detail how Defendants' massive expansion in 2019-2020 led to their control over the property where the crash occurred. It began with a massive land grab, which included promises to local residents as to how Defendants would operate in and around their Boca Chica facilities.[89] This expansion gives context that explains to this Court why Defendants controlled the area where the crash occurred and why their unique business operations would support this level of control.[90]

---

[85] *Brown,* 80 S.W.3d at 556 (quoting *Van Page,* 701 S.W.2d at 833-34).

[86] *Levine,* 537 S.W.3d at 473 (quoting *Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211, 214 (Tex. 2008)).

[87] *Id.* (quoting *Butcher v. Scott,* 906 S.W.2d 14, 15-16 (Tex. 1995)).

[88] *Id.*

[89] [Dkt No. 19, ¶7-14]

[90] [Id.]

Mrs. Venegas pled that Defendants controlled the access point where the crash occurred.[91] The access point is where the single lane LBJ Boulevard connects directly to State Highway 4.[92] Two pictures indicate the area in dispute, which is the exact location where the crash occurred.[93]

But not only did Mrs. Venegas plead that Defendants controlled the "access point," she also pled that they controlled the public streets, including a short portion of SH 4, adjacent to their Boca Chica facilities.[94] Defendants controlled this property to such an extent that they: (1) renamed a portion of the property "Rocket Road,"[95] (2) began treating this property as their own private roads;[96] (3) treated SH 4 as "a part of their facilities and uses them as an extension of their commercial operations"[97] and (4) even hired private employees, security, and government officials to handle a variety of tasks for their benefit on this property.[98]

Defendants' employees, servants, and agents controlled the property in question by instructing their personnel to: (1) patrol this property hourly;[99] (2) respond to accidents, disturbances, and security threats on this property;[100] (3) monitor and direct traffic;[101] (4) communicate with

---

[91] [Id. at ¶11]

[92] [Id.]

[93] [Id. at ¶11-12 and 32-33]

[94] [Id. at ¶15-27]

[95] [Id. at ¶17]

[96] [Id. at ¶17-21]

[97] [Id. at ¶21]

[98] [Id. at ¶15-16]

[99] [Id. at ¶15]

[100] [Id. at ¶16]

[101] [Id.]

delivery drivers on SH 4;[102] (5) control deliveries on SH 4;[103] (6) assist drivers on SH 4 with parking, re-locating and delivering their goods;[104] and (7) escort drivers on SH 4 to SpaceX's facilities.[105]

When Defendants' personnel became aware of unsafe conditions at the access point, the personnel raised these unsafe conditions with SpaceX. The reasonable assumption in Mrs. Venegas's favor is that these unsafe conditions were addressed because Defendants knew they had a duty to make safe the unsafe conditions on property under their control.[106]

Mrs. Venegas pled a plausible claim that Defendants owed a duty of care to make safe unsafe conditions at the property where the crash occurred because Defendants controlled the property where the crash occurred. The analysis should end here.

**C. A Duty Existed When Unsafe Conditions on Defendants' Property Contributed to the Crash.**

A duty of care also exists if Defendants' property itself created unsafe conditions on SH 4 sufficient to cause a crash, and Mrs. Venegas pled sufficient facts to show that Defendants' property created unsafe conditions at the access point, and therefore, even if Mrs. Venegas did not plead that Defendants controlled the access point a duty is still properly pled.

**i. A party has a duty to ensure its property does not endanger the public using an abutting highway.**

"The Texas Supreme Court has held that the owner or occupant of premises abutting a highway must exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage or travel, and the owner or occupant is liable for any injury that

---

[102] [Id.]

[103] [Id.]

[104] [Id. at ¶18]

[105] [Id.]

[106] [Id. at ¶27]

proximately results from his wrongful acts in this respect."[107] This has been the law in Texas for eighty years.[108]

The use of the term "abut" is not construed to impose this duty only on land that "touch[es] along a border or a projecting part" or directly "shares a boundary with the road" where the incident occurred.[109] Instead, this term "abut" focuses on dangerous conditions in "close proximity"[110] to a public road that "requires "a possessor of land to avoid allowing a condition of his land to interfere unreasonably with the public's right to use a public highway.""[111]

Therefore, if any party owns property with unsafe conditions in close proximity to a public road and the unsafe conditions "could endanger the safety of persons using a public road," the party "owe[s] the duty to exercise reasonable care to avoid endangering the safety of persons using the road."[112]

The application of this rule to this case means that even if Defendants do not control the property where the crash occurred—which they do—they still owed a duty to the Venegas family if unsafe conditions on their property in close proximity to SH 4 endangered the Venegas family and resulted in the crash.

### ii. The classic case illustrating this rule is *McKnight v. Calvert*, where a tree on private property obscured the view of a stop sign for persons traveling on an abutting street.

In *McKnight v. Calvert*, an appeal followed a jury verdict in a car wreck case, where a plaintiff ran a stop sign in a residential neighborhood and crashed.[113] After suit was filed, the

---

[107] *In re TPCO Am. Corp.,* 2018 Tex. App. LEXIS 2566 at *11 and *Alamo Nat'l Bank,* 616 S.W.2d at 910.

[108] *Atchison v. Texas & P.R. Co.*, 143 Tex. 466, 469 (Tex. 1945).

[109] *McKnight v. Calvert,* 539 S.W.3d 447, 457 (Tex.App.—Houston [1st Dist.] 2017, no pet.).

[110] *Id.* at 458 (the Court explained cases where the term "abut" merely means "close proximity to a public road").

[111] *Id.* at 457 (pointing to *Alamo National Bank,* 616 S.W.2d at 910).

[112] *Id.* at 458.

[113] 539 S.W.3d 447, 450 (Tex.App.—Houston [1st Dist.] 2017, no pet.]

defendant designated the Coffindaffers as responsible third parties, claiming a tree on their property obscured the view of the stop sign.[114] The defendant argued that the Coffindaffers owed the plaintiff a duty of care to ensure that their property did not endanger the public traveling on the abutting public road, and the Coffindaffers argued adversely, claiming they owed no duty because they did not own or occupy the road or property where the stop sign was located.[115]

The Houston Court of Appeals concluded that the evidence established that the Coffindaffers owned property where the tree was located, and the tree could endanger the safety of persons using the public road by obscuring a stop sign, and therefore, the jury's verdict faulting in-part the Coffindaffers was not erroneous.[116]

### iii.   Unsafe conditions on Defendants' abutting property endangered the Venegas family traveling on a public road sufficient to impose a duty of care.

Mrs. Venegas pled that Defendants owned property abutting SH-4 where the crash occurred,[117] describing the "access point to SpaceX's launch control centers" in comparison to Defendants' property at length.[118] LBJ Boulevard previously led to Boca Chica Village, but now appears to be the private driveway for SpaceX's facilities.[119] Defendants' launch control centers are in close proximity to the access point,[120] and four photographs in the Complaint support this.[121]

The unsafe commercial deliveries described above began as a result of Defendants' unprecedented 2019-2020 expansion and increase in traffic around-the-clock.[122] These deliveries

---

[114] *Id.* at 451.

[115] *Id.* at 457.

[116] *Id.* at 458.

[117] [Dkt No. 19, ¶ 11]

[118] [Id. at ¶ 11]

[119] [Id. at ¶ 8-11]

[120] [Id.]

[121] [Id. at ¶ 11-12]

[122] [Id. at ¶ 14, 18-20]

were happening at night without lights.[123] Defendants' access point was too narrow and too few, and[124] there were too many, unorganized deliveries causing a backlog.[125]

Defendants failed to adequately address these unsafe conditions, by refusing to install onto their property lights, cones, or warnings to address conditions on their property—not on SH 4.[126] Defendants failed to widen the access point they owned or controlled, or add additional access points, to allow drivers to safely enter their facilities.[127] Defendants implemented no policies or procedures or provided no instructions to third-party companies delivering loads to their site at night to avoid these unsafe conditions.[128] Paragraph forty of the Complaint identifies two dozen additional failures.[129]

Defendants' failures resulted in drivers struggling and at times outright being unable to access Defendants' property at night.[130] This struggle resulted in drivers stalling across SH 4.[131] The conditions on Defendants' property created a danger to those, like Plaintiffs, using SH 4 near the access point.[132] Defendants knew this, but told their own people to "shut up about it,"[133] even after taking some limited steps to alleviate the unsafe attempts to make deliveries to their property.

---

[123] [Id. at ¶ 23]

[124] [Id. at ¶ 24]

[125] [Id. at ¶ 18, 24]

[126] [Id. at ¶ 19-27]

[127] [Id. at ¶ 20]

[128] [Id. at ¶ 20]

[129] [Id. at ¶ 40]

[130] [Id. at ¶ 24-25]

[131] [Id. at ¶ 18, 24-25, 30-31]

[132] [Id. at ¶ 23-24, 28-36]

[133] [Id. at ¶ 27]

Taking all facts and assuming inferences in Plaintiff's favor, Mrs. Venegas pled a plausible claim that unsafe conditions on Defendants' property endangered the Venegas traveling on SH 4, which ultimately contributed to the crash.

### D. Two Exceptions Apply That Imposes A Duty Where One Otherwise Would Not Exist.

#### i. A party owes a duty when a party agrees to make safe known, unsafe conditions or creates unsafe conditions on property it neither owns nor controls.

"Texas courts have recognized four closely-related 'assumed duty' exceptions to prevent accidents on adjacent property that a person neither owns or occupies."[134] Two exceptions—ignored entirely by Defendants—apply here, and are yet more reason to deny Defendants' Motion.

The first exception is when "a person who agrees or contracts, either expressly or impliedly, to make safe a known, dangerous condition of real property may be held liable for the failure to remedy the condition."[135] Said another way, "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully if he acts at all."[136] The second exception is when "a person who has created a dangerous condition may be liable even though not in control of the premises at the time of the injury."[137] When either exception applies, the party's conduct "impos[es] a duty where one otherwise would not exist."[138]

---

[134] *Hirabayashi*, 977 S.W.2d at 707 (citing to *Page*, 701 S.W.2d at 835)). See also *In re TPCO Am. Corp.*, 2018 Tex. App. LEXIS 2566 at *11; *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)). Texas law generally recognizes four exceptions to the general "no duty" rule. Only two are discussed in this response.

[135] *Hirabayashi*, 977 S.W.2d at 707 (citing to *Page*, 701 S.W.2d at 835 and *Gundolf v. Massman-Johnson*, 484 S.W.2d 555 (Tex. 1972)); see also *In re TPCO Am. Corp.*, 2018 Tex. App. LEXIS 2566 at *11 (quoting *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993) ("One who agrees to make safe a known dangerous condition of real property owes a duty of care.").

[136] *In re TPCO Am. Corp.*, 2018 Tex. App. LEXIS 2566 at *11 (quoting *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991) and also quoting *Page*, 701 S.W.2d at 835, "[o]ne who agrees to make safe a known dangerous condition may be liable for the failure to remedy the condition.").

[137] *Hirabayashi*, 977 S.W.2d at 707 (citing *Page*, 701 S.W.2d at 835); *In re TPCO Am. Corp.*, 2018 Tex. App. LEXIS 2566 at *11 (also quoting *Page*, 701 S.W.2d at 835 and *Osuna v. S. Pac. R.R.*, 641 S.W.2d 229, 230 (Tex. 1982) ("Having undertaken to place a flashing light at the cross for the purpose of warning travelers, the railroad was under a duty to keep the signal in good repair, even though the signal was not legally required").

[138] *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex. 1997).

### ii.  Mrs. Venegas pled a plausible claim to support both exceptions.

Mrs. Venegas pled that Defendants agreed to make safe what were known, unsafe conditions on SH 4. First, Defendants knew unsafe conditions were occurring.[139]

The unsafe conditions are described in detail above and are incorporated below. In response, Defendants acted to address these unsafe conditions. Defendants began treating the access point and relevant portions of SH 4 like it was their own property.[140] Defendants hired their own personnel, contract personnel, and local police officers to address these safety concerns.[141] Defendants' retained help was tasked with virtually every aspect of monitoring, controlling, and assisting to remedy the unsafe conditions described in this Response.[142] This effort included patrolling, responding to accidents, disturbances and security threats, monitoring and directing traffic, escorting deliveries, communicating with drivers, and assisting driver on parking, relocating, and delivering goods.[143]

Whether Defendants' actions were done gratuitously or by contract is irrelevant. Defendants acted to address unsafe deliveries to their facilities safe, and therefore, Texas law imposes a duty on Defendants.

Again, Defendants created the unsafe conditions described above,[144] which resulted from Defendants' unsafe expansion[145] that were not present beforehand.[146] The deliveries were unsafe because drivers were forced to deliver goods under circumstances that were dangerous.[147] It is unsafe to force drivers to deliver goods without proper lighting, escorts, warnings, signs, security personnel,

---

[139] [Id. at ¶ 27]

[140] [Id. at ¶ 17, 21]

[141] [Id. at ¶ 15-18, 27, 35]

[142] [Id. at ¶ 15-36]

[143] [Id.]

[144] [Id. at ¶ 14-36]

[145] [Id. at ¶ 13]

[146] [Id.]

[147] [Id. at ¶ 23-25]

and without policies and procedures in place to address these unsafe deliveries.[148] It is unsafe to force drivers to back into property in the dark that is too narrow,[149] leaving trucks stranded across public roads without warning.[150]

The driver in this case admitted these unsafe conditions existed and caused the crash.[151] Defendants knew these unsafe conditions existed.[152] Mrs. Venegas, therefore, also pled a plausible claim that Defendants created unsafe conditions on SH 4 sufficient to impose a duty of care on Defendants.

### E. Defendants Owed the Venegas Family a Duty of Care Owed to a Licensee.

The precise duty owed "depends upon the status of the plaintiff at the time the incident occurred."[153] The duty of care owed to persons injured on public roadways is the same duty of care owed to that of "a licensee on private property."[154]

The duty owed to a licensee requires that "a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not."[155]

In this case, Mrs. Venegas pled that Defendants owed her family a reasonable duty of care, including the duty to reduce or eliminated risks on or at the entrance to their property by warning the Venegas family of the unsafe conditions so they could be avoided against or guarding against

---

[148] [Id. at ¶ 19-20, 23-25]

[149] [Id. at ¶ 24-25, 30-31]

[150] [Id. at ¶ 30-31, 35]

[151] [Id. at ¶ 35]

[152] [Id. at ¶ 27 and 35]

[153] *Levine,* 537 S.W.3d at 474 (quoting *Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex. 2005)).

[154] Tex. Civ. Prac. & Rem. Code § 101.022(a), quoted by *City of Austin v. Credeur,* 2021 Tex.App. LEXIS 1083, *10 (Tex.App.—Austin Feb. 11, 2021, no pet.); *Samson v. Univ. of Tex. at Austin,* 500 S.W.3d 380, 385 (Tex. 2016).

[155] *Sampson,* 500 S.W.3d at 385.

them by taking steps to avoid the unsafe conditions.[156] Then, in addition to all of the forementioned facts, Mrs. Venegas identified twenty-two reasonable steps to warn or make safe unreasonable conditions that should have been done and were not done to avoid the crash.[157] Therefore, Mrs. Venegas properly articulated in her live pleading the standard for the duty owed by Defendants to her family as licensees.

### F. Mrs. Venegas Pled a Plausible Respondeat Superior Claim.

#### i. Respondeat Superior applies to the negligent conduct of agents or employees and is not limited only to employees as Defendants suggest.

Defendants claim that respondeat superior applies only to employees, and SOS Security, LLC is an independent contractor which automatically prevents a respondeat superior claim.[158] Defendants are wrong.

"Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an **agent or employee** acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong."[159] The justification for imposing such liability is that the principal or employer has **the right to control** the means and methods of the agent or employee's work.[160]

---

[156] [Dkt No. 19, ¶ 37-39]

[157] [Id. at ¶ 40-41]

[158] Defendants unsupported opinion as to SOS Security's contractor status is irrelevant at the pleading stage and proves, once again, that Defendants are interjecting facts far-outside Mrs. Venegas's pleading. This is a disputed factual issue that is only appropriate for summary judgment and not at the pleading stage.

[159] *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 541-42 (Tex. 2002).

[160] *Id.* at 542.

This doctrine does not apply to an independent contractor when such persons has "sole control over the means and methods of the work to be accomplished."[161] It does apply to independent contractors if Defendants "retain the control of any part of the work."[162]

Additionally, The Texas Supreme Court has recognized that a property owner is liable for any injury that proximately results from his negligence, and "[d]elegating this duty to an independent contractor (like SOS Security) does not relieve the owner or occupant of liability for his own negligence."[163] Thus, "the right to control remains the supreme test for whether the master-servant relationship exists, and thus, whether the rule of vicarious liability applies."[164]

### ii. Defendants controlled their agents, sufficient to support a respondeat superior claim.

Mrs. Venegas pled that Defendants hired three groups of individuals—not just SOS Security, LLC—to provide various services relating to the delivery at issue in this case. SpaceX hired SOS Security, LLC, a private security company,[165] employed their own internal personnel and hired off-duty officers with the Cameron County Sheriff's Department.[166]

Defendants are incorrect that Mrs. Venegas pled no wrongful actions or inactions by any employee or agent that resulted in the negligent conduct complained of. Indeed, even a cursory review of Plaintiff's complaint proves otherwise.[167] Defendants tasked these three groups with a host of duties to be performed, directly connected to commercial deliveries,[168] and Plaintiff articulated

---

[161] *Id.*

[162] *Ponder v. Morrison-Knudsen Co.*, 685 F. Supp. 1359, 1362, fn 2 (E.D. Tex. 1988) (quoting *Redinger v. Living, Inc.,* 689 S.W.2d 415 (Tex. 1985)).

[163] *Alamo Nat'l Bank,* 616 S.W.2d at 911 (citing *Moore & Savage v. Koppin,* 135 S.W. 1033 (Tex. Civ. App. 1911, writ ref'd).

[164] *Id.* (quoting *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins,* 926 S.W.2d 287, 290 (Tex. 1996)).

[165] [Dkt No. 19, ¶ 15]

[166] [Id. at ¶ 16-17, 27, 42-44]

[167] [Id. at ¶ 37-41]. Paragraph 37 incorporates earlier-described duties as well as those failures described in paragraphs 40 as a basis to support negligent conduct.

[168] [Id. at ¶ 15-44]

failures that contributed to and caused the crash.[169]  Defendants' duty ultimately could not be delegated to an independent contractor.

The formal status of SOS Security and off-duty police personnel is unknown and irrelevant for pleading purposes. What is relevant is that Mrs. Venegas pled that these individuals were controlled by and were agents and/or servants for Defendants[170] and were operating within the scope of their employment or agency for Defendants at all relevant times.[171] Mrs. Venegas pled a plausible claim that Defendants were in charge of and controlled the work performed by these individuals, sufficient to establish a claim for respondeat superior.[172]

### IV.  Conclusion.

This is not a frivolous case typically treated with a 12 series motion. Instead, Plaintiff Mrs. Venegas filed a highly detailed lawsuit, setting forth numerous reasons why Defendants owed the Venegas family a duty of care. When faced with conducting required discovery, rather than properly responding, Defendants instead filed a meritless motion and attempted to interject hotly disputed facts far outside of Mrs. Venegas's Complaint. Defendants' Motion should thus be converted to one for summary judgment, and is thus premature pending meaningful discovery.

However, and perhaps more appropriately, if this Court limits its analysis to the facts set forth in Mrs. Venegas's Complaint, Defendant's Motion should be denied. To the extent this Honorable Court disagrees, Mrs. Venegas should be afforded an opportunity to timely re-plead.

---

[169] [Id. at ¶ 15-44]

[170] [Id. at ¶ 16-17, 27, 42-44]

[171] [Id. at ¶ 43]

[172] [Id. at ¶ 42-44]