Case 1:21-cv-00054   Document 27   Filed on 12/22/21 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
December 22, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUCINNE VENEGAS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:21-54 |
| | § | |
| SPACE EXPLORATION TECHNOLOGIES | § | |
| CORPORATION & DOGLEG PARK, LLC, | § | |
|     Defendants. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On November 15, 2021, Defendants Space Exploration Technologies Corporation ("SpaceX") and Dogleg Park, LLC ("Dogleg"), filed a motion to dismiss, pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 12(c). Dkt. No. 22. On December 6, 2021, Plaintiff Lucinne Venegas, individually and on behalf of the estate of Carlos Venegas and on behalf of her minor children, filed a response. Dkt. No. 25. On December 13, 2021, SpaceX and Dogleg filed a reply brief. Dkt. No. 26.

After reviewing the record and the relevant case law, it is recommended that the motion to dismiss be granted. In summary, SpaceX and Dogleg did not owe any legal duty to Venegas.

## I. Background

### A. Factual Background

In deciding a motion to dismiss, the Court must "accept all well-pled facts as true and view all facts in the light most favorable to the plaintiff." Melendez v. McAleenan, 928 F.3d 425, 427 (5th Cir. 2019). The factual background is written with this standard in mind.

On June 7, 2020, Carlos Venegas, his wife Lucinne, and their three children were driving home from Boca Chica Beach at around 4:00 a.m. Dkt. No. 19, p. 9. While driving down State Highway 4, they crashed into an eighteen-wheel commercial truck that was stopped in the middle of the road. Id., pp. 9-10. Carlos Venegas was killed in the crash; the other family members survived, but "suffered injuries to their spines and legs." Id.

The crash occurred outside of the Defendant's facilities. Dkt. No. 19, pp. 8-11. The commercial truck was backing up to deliver its cargo to the Defendant's facilities in Boca Chica, Texas. Id. The driver of the truck was not an employee of the Defendant. Id.[1] The complaint alleges that it was completely dark and there were no reflective lights or any other warning that the tractor-trailer was blocking the road. Id.[2]

The complaint alleges that the access point to the SpaceX facilities was unable to safely accommodate "large, commercial traffic at all hours of the day." Dkt. No. 19, p. 8. The complaint further alleges that the access point from State Highway 4 to the Defendant's facilities "was too narrow to accommodate large commercial vehicles." Id.

The Defendants hired SOS Security to respond, "to any and all accidents, disturbances, and security threats around SpaceX's facilities, including those occurring on state and local roads." Id., p. 6. SOS Security was also responsible for monitoring and directing delivery traffic. Id. The complaint alleges that SOS Security personnel notified the Defendants that the access point was unsafe, but that the SpaceX security coordinator, Chase Gunner, purportedly responded that they should "shut up about it." Id., p. 8.

**B. Procedural Background**

On March 15, 2021, Lucinne Venegas – both on behalf of her husband's estate and her minor children – filed suit in the 444th District Court in Cameron County, Texas. Dkt. No. 1-1, p. 5. She sued SpaceX and Dogleg, asserting that they were negligent in failing to take reasonable steps to widen the access point to their facilities and in failing to warn her that a delivery truck was blocking the road. Id., p. 15. She sought twenty million dollars

---

[1] The Court notes, in passing, that Venegas reached a settlement with the trucking company and driver in a separate lawsuit. Dkt. No. 22-1, p. 2.

[2] The Defendants assert that the police report shows that Carlos Venegas had drugs in his system when the crash occurred. The Court will not consider this evidence for two reasons. First, the Court, generally, cannot consider matters outside of the complaint when deciding a motion to dismiss. Gines v. D.R. Horton, Inc., 699 F.3d 812, 820 (5th Cir. 2012). Second, Venegas's mental state is irrelevant, at this stage, to the question of whether the Defendants owed him any legal duties on the night of the crash.

in damages. Id., p. 18. On March 22, 2021, the Defendants received service of process. Id., p. 3.

On April 16, 2021, the Defendants timely removed the case to this Court based on diversity jurisdiction. Dkt. No. 1. Venegas is a citizen of Texas; the Defendants are incorporated in Delaware, with their principal place of business in California. Id.

On November 1, 2021, the Plaintiff filed a first amended complaint. Dkt. No. 19. In that complaint, she re-urged her negligence claims and also asserted that the Defendant's employees and SOS Security personnel were agents of the Defendants, giving rise to a claim of respondeat superior. Id.

On November 15, 2021, the Defendants filed a motion for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c). Dkt. No. 22. They argue that under Texas law, they had no duty to protect the Plaintiff from the actions of its non-employees on a public highway. Id. They also argue that the Plaintiff has not stated a valid claim for respondeat superior. Id.

On December 6, 2021, the Plaintiff filed a response. Dkt. No. 25. The Plaintiff argues that the Defendants owed a duty to the Plaintiff because: (1) they controlled State Highway 4; (2) the narrow access point endangered the public; and (3) they created an unsafe condition. Id. They also argue that by directing and controlling deliveries to their facilities, the Defendants agreed to make the conditions safe, giving rise to a duty of care.[3] Id.

On December 13, 2021, the Defendants filed their reply brief. Dkt. No. 26. They reiterate their argument that they had no duty to protect the Plaintiff from the actions of a non-employee on an adjoining public highway. Id. They also argue that they cannot control

---

[3] The Plaintiffs also argue that the Defendants filed the instant motion in an effort to avoid engaging in discovery. Dkt. No. 25, p. 12. The Court finds this argument to be beside the point. If the complaint cannot survive a Rule 12 analysis, the Defendants should not be forced to engage in discovery in a case that cannot survive facial review of the complaint. Senegal v. Jefferson Cty., 1 F.3d 1238 (5th Cir. 1993) ("the degree of discovery conducted is irrelevant" to a motion to dismiss). If the complaint does survive the Rule 12 analysis, the case will continue, and the Defendants will be unable to avoid their discovery obligations.

a public highway without the express consent of the Government; they did not create any unsafe conditions; and that they did not agree to make safe any conditions. Id., pp. 6-14.

## II. Applicable Law

### A. Diversity Jurisdiction

United States District Courts have original jurisdiction in civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The Plaintiff has sought at least $10 million in damages. Furthermore, the Plaintiff is a citizen of Texas while the Defendants are citizens of Delaware and California. At this stage of the proceedings, diversity jurisdiction is present.[4]

Because federal jurisdiction in this case is based on diversity of citizenship, the court applies Texas law when analyzing substantive issues. PPI Technology Services, L.P. v. Liberty Mutual Insurance, 701 F.3d 1070, 1074 (5th Cir. 2012). "If no state court decisions control, [a federal court] must make an 'Erie[5] guess' as to how the Texas Supreme Court would apply state law." Beavers v. Metro. Life Ins. Co., 566 F.3d 436, 439 (5th Cir. 2009) (footnote added).

### B. Dismissal Under Rule 12

The Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(c). A motion under Rule 12(c) is judged by the same standards as a motion to dismiss under Rule 12(b)(6). Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 313 n. 8 (5th Cir. 2002).

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level." Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., 512

---

[4] The Plaintiff has stated that she believes that the Defendants have moved their primary operations from California to Texas, which would defeat diversity jurisdiction. Dkt. No. 4. The Plaintiff has not filed a motion to remand, so the Court will rely on the allegations of citizenship in the notice of removal. Dugas v. Washington Mut., 2005 WL 2234639, at *3 (E.D. Tex. Sept. 13, 2005) ("Generally, the existence of diversity jurisdiction is determined from the record at the time the notice of removal is filed").

[5] Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

Case 1:21-cv-00054 Document 27 Filed on 12/22/21 in TXSD Page 5 of 11

F.3d 137, 140 (5th Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)) (internal quotation marks omitted). The Supreme Court has further defined the Twombly standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Unless the Court specifically holds otherwise, dismissal for failing to state a claim upon which relief can be granted is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

### III. Analysis

At this point in the proceedings, the dispositive issue is whether – under the facts as pled in the complaint -- the Defendants breached a legal duty that they owed to the Plaintiff under Texas law. The question of whether a duty exists is a question of law for the Court to decide. Allen Keller Co. v. Foreman, 343 S.W.3d 420, 425 (Tex. 2011). As such, the Court considers the general rule of what duty a landowner owes to persons driving past his land on a public road and then considers whether any other rules would give rise to a legal duty. The Court concludes that the Defendants did not breach any legal duty that they owed to the Plaintiff.

**A. General Rule**

"Texas law generally imposes no duty on a land occupier to prevent injury to those on an adjacent city street." Smit v. SXSW Holdings, Inc., 903 F.3d 522, 528 (5th Cir. 2018). This rule has been specifically applied to situations with similar facts to this case.

When a motorist on a public street collided with a vehicle that was attempting to enter the premises of a local raceway to watch a car race, the motorist sued the raceway. Dixon v. Houston Raceway Park, Inc., 874 S.W.2d 760, 762 (Tex. App. 1994). The

5

motorist claimed that the raceway failed to properly direct traffic entering its premises and failed to maintain sufficient traffic control devices. Id. The court found that, because "the accidents occurred on a public road outside the control of the Raceway, the Raceway owed no legal duty" to the motorist. Id., at 763. The Texas appellate court concluded that the "owner or occupier of property is not an insurer of the safety of travelers on an adjacent highway and is not required to provide against the acts of third persons." Id., at 762.

Moreover, when a motorist struck a tractor-trailer that was blocking traffic on a state highway after leaving a facility that it was picking up cargo from, the motorist sued the facility. Naumann v. Windsor Gypsum, Inc., 749 S.W.2d 189, 190 (Tex. App. 1988), writ denied (July 13, 1988). The motorist alleged that the facility was negligent for "designing its plant in a manner that forces tractor-trailers exiting its property to block both lanes" of traffic on the adjoining highway. The Texas appellate court held that the facility did not owe any legal duty to the motorist. Id. The Texas court stated that "a landowner's duty to exercise reasonable care not to endanger the safety of persons on an abutting highway does not create an obligation to guard passing motorists against the possible negligence of an independent contractor over whom the landowner exercises no control and whose competence to perform his duties the landowner has no reason to doubt." Id., pp. 191-92.

The facts alleged in the complaint in this case are virtually indistinguishable from those in Naumann. In both cases, it was alleged that the design of the facilities was so unsafe that it forced non-employee delivery drivers to operate their vehicles in a way that endangered motorists on an adjoining highway. The Texas appellate court held that the facility owed no legal duty to the motorists. Even if the design of the facility was less than ideal, the landowner "had every right to expect" the delivery drivers "to exercise due care and to enter the highway safely." Naumann, 749 S.W.2d at 192. Thus, the general rule would apply in this case and mandate dismissal.

### B. Exceptions

At the same time, though, "Texas courts have recognized four common-law exceptions to the general rule just discussed, that a premises owner has no duty to prevent accidents or warn of hazards on adjacent property that it neither owns nor controls. Under

6

these exceptions, an owner assumes a duty of care if it: (1) agrees or contracts either expressly or impliedly to make safe a known, dangerous condition of real property; (2) creates the dangerous condition; (3) assumes actual control over the adjacent property; or (4) knows about, but fails to warn of, an obscured danger on land directly appurtenant to the premises owner's land." HNMC, Inc. v. Chan, 2020 WL 2832780, at *4 (Tex. App. May 28, 2020) (internal citations omitted). Thus, the Court must consider whether any of these exceptions apply to this case.

### 1. Assumed Duty

Under Texas law, "a private person who agrees to make safe a known, dangerous condition of real property may be liable for the failure to remedy the condition." City of Denton v. Page, 701 S.W.2d 831, 835 (Tex. 1986).

The Plaintiffs assert that because the Defendants hired SOS Security and controlled traffic near the facility — including escorting deliveries, communicating with delivery drivers, and assisting with parking, relocating, and delivering goods — they agreed to make safe a known, dangerous condition of real property. Despite this assertion, there is no allegation that the Defendants agreed to make safe the area surrounding its facility. It may have chosen to patrol to ensure the timely and efficient delivery of cargo to its facility, but there is no allegation that it agreed to make the area on State Highway 4 safe for passing motorists.

Furthermore, even if the Defendants had worked in the past to control traffic near the facility, this does not mean that the Defendants agreed to do so in perpetuity. Dixon, 874 S.W.2d at 763 (isolated previous incidents of traffic control does not mean that the landowner had agreed to make the traffic safe on that particular day). Accordingly, this exception does not apply to this case.

### 2. Creation of Condition

"There is a general rule in Texas that an owner or occupier of premises abutting a highway has a duty to exercise reasonable care to avoid endangering the safety of persons using the highway as a means of travel, and is liable for any injury that proximately results from his negligence." Lawson v. B Four Corp., 888 S.W.2d 31, 34 (Tex. App. 1994). This

7

exception, however, is limited to instances where the landowner "negligently releases upon the highway an agency that becomes dangerous by its very nature once upon the highway." Dixon, 874 S.W.2d at 763 (internal quotation marks omitted). The meaning of the word agency becomes clear with its application to particular facts.

Cases where this exception has been found to be applicable all involve a person or thing entering the street and immediately causing danger. Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981) (bricks from demolished building fall into the street); Atchison v. Texas Pac. Ry., 143 Tex. 466, 186 S.W.2d 228, 229 (1945) (smoke from grass fire drifts across adjacent road); Beaumont Iron Works Co. v. Martin, 190 S.W.2d 491, 495 (Tex. Civ. App.—Beaumont 1945, writ ref'd w.o.m.) (windowpane falls from building onto adjacent sidewalk); Golden Villa Nursing Home, Inc. v. Smith, 674 S.W.2d 343, 350 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (nursing home patient with known tendency to wander onto highway escapes facility and knocks down motorcyclist).

The Texas appellate court rejected application of this exception in Naumann, finding that the landowner did not discharge "an inanimate, incognizant or inherently dangerous entity" into the adjoining highway. Naumann, 749 S.W.2d at 191. Rather, a truck operated by an independent contractor entered the highway and the landowner had no duty to "see that his independent contractor performs his work in a safe manner." Id. Other courts have held likewise. See Huebotter v. Diamond Shamrock Ref. Co., 1999 WL 1244422, at *3 (Tex. App. Dec. 22, 1999) (landowner "did not create the dangerous situation that caused the accident in this case because it was not responsible for the character of the road abutting its refinery nor for the size of the trucks entering and exiting its refinery"). Once again, this exception is inapplicable.

### 3. Assumes Actual Control

Under Texas law, "a premises-liability defendant may be held liable for a dangerous condition on the property if it assumed control over and [assumed] responsibility for the

premises, even if it did not own or physically occupy the property." Cty. of Cameron v. Brown, 80 S.W.3d 549, 556 (Tex. 2002) (cleaned up).[6]

Under Texas law, traffic control is a governmental function. TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(21). "Since the regulation of traffic is a governmental function and Texas law gives the authority to regulate traffic direction to the state and local government, only governing authorities and their agents are entitled to regulate traffic on public roadways. Private entities have no authority to regulate or direct traffic on public roads." Hoechst Celanese Corp. v. Compton, 899 S.W.2d 215, 227 (Tex. App. 1994), writ denied (Dec. 1, 1994). The Government "owns and controls" its streets "to the exclusion of all others." Smit, 903 F.3d at 528. The "burden of controlling traffic on a public road is a governmental function that cannot be transferred to a private entity." Garrett v. Houston Raceway Park, Inc., 1996 WL 354743, at *2 (Tex. App. June 27, 1996).

The Plaintiff argues that because SOS Security and the Defendants directed traffic; patrolled the property; responded to accidents; and, communicated directly with delivery drivers; it had control over the specific area where the accident occurred. Dkt. No. 25, p. 22. Indeed, the Plaintiff argues that the Defendants "controlled the public streets." Id. That allegation is directly contrary to law. There has been no factual allegation that Cameron County gave up its right to control the highway. TEX. TRANSP. CODE § 251.016; see also Smit, 903 F.3d at 528 (5th Cir. 2018) (absent a showing that the government delegated control over a road to a private party, then the private party does not have legal control over the road). This exception is inapplicable.

### 4. Obscured Danger

Under Texas law, a landowner has a duty to warn of known obscured dangers on land that directly abuts the landowner's property. HNMC, Inc. v. Chan, 2020 WL 2832780,

---

[6] "Cleaned up" is a parenthetical that signals to the reader that the author "has removed extraneous, non-substantive clutter such as brackets, quotation marks, ellipses, footnote signals, internal citations or made un-bracketed changes to capitalization," in order to make the quotation more readable, but has not altered the substance of the quotation. Na v. Gillespie, 2017 WL 5956773, at *3, 234 Md. App. 742, 174 A.3d 493 (Md. Ct. Spec. App. Dec. 1, 2017); see also Brownback v. King, — U.S. —, 141 S. Ct. 740 (2021) (using "cleaned up").

at *7 (Tex. App. May 28, 2020). This typically takes the form of "obscured dangers present near the entries and exits of premises." Id. It has been applied to a tree that grew in a way that it obscured a stop sign. McKnight v. Calvert, 539 S.W.3d 447, 450 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Moreover, the owner of a parking lot had a duty to erect barriers to protect his invitees from an adjoining obscured creek. Parking, Inc. v. Dalrymple, 375 S.W.2d 758, 762 (Tex. Civ. App. 1964). Additionally, "[p]roperty owners owe a duty to motorists on an adjacent highway to properly maintain the grass and weeds so that they do not impair the motorists' view." Metzloff v. Royal Trucking Co., 473 F. Supp. 3d 700, 706 (E.D. Tex. 2020).

In this case, the danger was not a creek or vegetation or trees obscuring Carlos Venegas's view of the danger. Rather, the danger came when an independent contractor in a tractor trailer blocked the street on a dark morning. The fact that there are other vehicles on the highway would seem to be well-known to all. The complaint itself notes that State Highway 4 is the "only way to reach" Boca Chica beach. Dkt. No. 19, p. 3. Any reasonable driver would know they needed to be aware of other traffic on the road, including stopped or stalled vehicles. "There is no duty to warn when the risks are matters within the ordinary knowledge common to the community." Hirabayashi v. N. Main Bar-B-Q, Inc., 977 S.W.2d 704, 707 (Tex. App. 1998) (internal quotation marks omitted). Because this danger was not obscured, the Defendants had no duty to warn against it. Id. This exception is inapplicable.

### C. Summary

In sum, the Court must apply the general rule that "a landowner's duty to exercise reasonable care not to endanger the safety of persons on an abutting highway does not create an obligation to guard passing motorists against the possible negligence of an independent contractor over whom the landowner exercises no control and whose competence to perform his duties the landowner has no reason to doubt." Naumann, 749 S.W.2d at 190. There are no exceptions that would allow the Plaintiff to escape the application of this rule. Accordingly, the Court should find that the Defendants did not

owe a legal duty to the Plaintiff and grant the motion to dismiss.[7] See Hernandez v. Baylor Univ., 274 F. Supp. 3d 602, 618 (W.D. Tex. 2017) ("Whether a legal duty exists is therefore a threshold question; if there is no duty, there can be no liability").

**IV. Recommendation**

The motion for judgment on the pleadings filed by the Defendants should be granted. Dkt. No. 22. The first amended complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on December 22, 2021.

_____
Ronald G. Morgan
United States Magistrate Judge

---

[7] Venegas seeks to hold the Defendants responsible for their actions, the actions of their employees and the actions taken by SOS Security. Dkt. No. 25, pp. 30-32. Because the Court finds that the Defendants did not owe a duty to Venegas, "it is axiomatic that a vicarious liability theory must also fail." Valley Shamrock v. Vasquez, 995 S.W.2d 302, 309 (Tex. App. 1999). Accordingly, there is no basis for any vicarious liability/respondeat superior claims against the Defendants.