IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUCINNE VENEGAS, Individually, on Behalf of the Estate of Carlos Javier Venegas and on Behalf of Her Minor Children, D.V., G.V., and M.V., | § § § § § | |
| *Plaintiff,* | § § | Civil Action No. 1-21-CV-54 |
| vs. | § § | |
| SPACE EXPLORATION TECHNOLOGIES CORPORATION and DOGLEG PARK, LLC, | § § § § § | |
| *Defendants.* | § § § | |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S MEMORANDUM AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS**

To the Honorable Fernando Rodriguez, Jr.:

Pursuant to Federal Rule of Civil Procedure 72(b), Plaintiff Lucinne Venegas files her written objections to the Honorable Magistrate Judge Ronald G. Morgan's memorandum and recommendation (Dkt No. 27) regarding the motion to dismiss by Defendants Space Exploration Technologies Corporation and Dogleg Park, LLC ("Defendants"). (Dkt No. 22) In support of her written objections, Mrs. Venegas respectfully shows the Court the following:

**OBJECTIONS TO MEMORANDUM AND RECOMMENDATION**

Mrs. Venegas respectfully objects to Judge Morgan's conclusion that Plaintiff failed to plead a plausible claim that Defendants agreed to make-safe a known, dangerous conditions at the access point thereby imposing a duty on Defendants to make-safe the access point where the crash occurred.

Mrs. Venegas respectfully objects to Judge Morgan's conclusion that Plaintiff failed to plead a plausible claim that Defendants retained the right to control the driver and the delivery

1

process sufficient to impose a duty on Defendants to control the delivery process at the access point and prevent foreseeable dangers they were aware of at the access point.

Mrs. Venegas respectfully objects to Judge Morgan's conclusion that Plaintiff failed to plead a plausible claim that Defendants' property itself created unsafe conditions that endangered the Venegas family traveling on State Highway 4 ("SH 4") sufficient to impose a duty on Defendants to make safe the unsafe conditions.

Mrs. Venegas respectfully objects to Judge Morgan's conclusion that Plaintiff's First Amended Complaint should be dismissed without leave to amend as any failure to include facts to support Mrs. Venegas's pleading can be cured by amendment.

### SUMMARY OF OBJECTIONS TO MEMORANDUM AND RECOMMENDATION

In their Motion, Defendants contend that Mrs. Venegas cannot maintain a suit against them because she has failed to plead a plausible claim that Defendants owed the Venegas family a duty of care sufficient to support her claim for negligence and gross negligence. This contention lacks merit for three reasons.

### *Assumed Duty*

Texas law imposes a duty of care on a party that agrees ("assumes") to make-safe a known, dangerous condition. Defendants argue a duty of care cannot be imposed in this case merely because Defendants had sometimes assisted in the safety of third parties in the past. Judge Morgan agreed, finding that prior work to control traffic in the past did not mean that Defendants agreed to do so in perpetuity.

This is not what Mrs. Venegas is alleging. She is not claiming that a duty arose in perpetuity or that it arose because of a few prior actions. She alleges that during the 2019-2020 expansion, Defendants undertook over a dozen obligations to safely secure the access point for deliveries after being warned that the access point was dangerous, and these obligations **were on-going** at the time of the crash. These facts, when accepted in their entirety as true and viewed in the light most

2

favorable to Mrs. Venegas is sufficient to support a "plausible" claim that Defendants owed a duty of care when they acted to make-safe the delivery process at the access point at the time of the crash.

### *Special Relationship*

Texas law imposes a duty of care on a party to control the actions of third parties, including independent contractors, when the party retains the right to control the third party's work and the defendant knew or should have known that it was foreseeable that the injury could occur.

At the pleading stage, Mrs. Venegas pled that Defendants were involved-in and controlled numerous aspects of the unloading process. In fact, Defendants' personnel were responsible for ensuring the delivery occurred safely. Defendants had been warned repeatedly that the unloading process at the access point was dangerous, and therefore, Defendants had reason to believe that the delivery process they controlled could foreseeably result in a crash at the access point sufficient to impose a duty on Defendants to make the access point safe during deliveries. Therefore, at the pleading stage and assuming all facts in the light most favorable to Mrs. Venegas, Mrs. Venegas plead a plausible claim that Defendants controlled the driver's unloading process that night and owed the Venegas family a duty of care on the night the crash occurred.

### *Creation of Unsafe Condition*

Lastly, Texas law imposes a duty of care when actions taken by Defendants created an unsafe condition on their property that resulted in the crash. Defendants focus only on the truck stranded across the road as the unsafe condition and argue this truck driver was not their employee and the truck was stranded across a public road. But these facts are disputed by Plaintiff, but most importantly, this view misses the point.

The danger was that the entrance to their property that Defendants owned was impassible at night, without lights, and under the circumstances present here, virtually guaranteed the stalling

3

of trucks between the access point and the road. Defendants had an obligation to make their property safe. They failed to do so.

In other words, the stranded truck was not the only unsafe condition, but also it was the requiring of night-time deliveries to a private property that could not support night-time deliveries safely, virtually guaranteeing the stranding of the truck and foreseeable danger to motorists traveling on an adjoining highway. Defendants created these unsafe, dangerous conditions, and therefore, Defendants owed a duty of care to prevent the unsafe conditions on property it owned and controlled.

Defendants cite to unhelpful summary judgment cases where the facts were not in dispute and the parties knew precisely: (1) what occurred; (2) how it occurred; and (3) the roles and involvement of each party. Additionally, Defendants concluded that the crash occurred by an independent contractor on a public road without any involvement by Defendants, and Judge Morgan respectfully agreed. But none of these facts are found in the Complaint. Under Rule 8, Mrs. Venegas was not required pre-discovery to plead with particularity every aspect of the crash, the parties' relationship to each other and involvement in the crash, or the precise location of the crash.

She simply needed to plead a short and plain statement that Defendants were involved in and controlled the unloading operation, created unsafe conditions during the unloading operation, and articulate the elements of negligence and gross negligence. She did so. Citing to summary judgment cases and making factual findings on disputed grounds is not appropriate at the pleading stage.

The Motion should be denied, or alternatively, Mrs. Venegas should be afforded leave to amend her petition if this Court finds that Mrs. Venegas's First Amended Complaint did not articulate sufficient facts to support the bases described herein.

## ARGUMENT IN SUPPORT OF
## OBJECTIONS TO MEMORANDUM AND RECOMMENDATION

**I. Defendants owed a duty because they acted to make-safe known, dangerous conditions at the access point and those efforts were on-going at the time of the crash.**

**A. Defendants misrepresent Mrs. Venegas's allegations regarding Defendants' on-going efforts.**

Defendants misrepresented Mrs. Venegas's allegations relating to Defendants' on-going conduct in claiming:

> "Plaintiff's theory is not that Defendants undertook affirmative steps to make SH 4 safer for motorists and then failed to complete those particular measures in a safe manner, but rather that Defendants allegedly failed to act to make the roadway safe . . . The fact that an entity has sometimes assisted in the safety of third parties does not create a continuing duty."[1]

Judge Morgan accepted Defendants' interpretation and concluded that "even if Defendants had worked in the past to control traffic near the facility, this does not mean that the defendants agreed to do so in perpetuity."[2]

This interpretation misstates Mrs. Venegas's allegations. She does not allege that a "few" prior actions imposed a perpetual duty. She details on-going efforts Defendants took during the limited period of 2019-2020—the same period the crash occurred—in which Defendants were engaged in a massive expansion.[3] It was during <u>this period</u>—not a few times prior or in perpetuity—that Defendants hired three groups of individuals tasked with specific duties[4] that were on-going at the time of the crash.[5] These duties included every aspect of monitoring,

---

[1] [Dkt No. 26, p. 13]

[2] [Dkt No. 27, p. 7]

[3] [Id. at ¶18]

[4] [Dkt No. 19, ¶ 15]

[5] [Id. at ¶ 15-44]

controlling, and assisting drivers during the unloading process.[6]  These efforts also included patrolling, responding to accidents, disturbances and security threats, monitoring and directing traffic, escorting deliveries, communicating with drivers, and assisting drivers on parking, relocating, and delivering goods.[7]

In other words, Defendants took unprecedented efforts to make-safe this stretch of SH 4, and in particular the access point to their control center, in an effort to protect the public. Defendants are not some mere bystanders uninvolved in the actions of an independent driver on a public road.

### B. Defendants reliance on *Dixon* and *Garrett* is unhelpful and misplaced.

Defendants cite to *Dixon v. Houston Raceway Park,* 874 S.W.2d 760 (Tex.App.—Houston [1st Dist.] 1994, no writ) for the proposition that "the fact that an entity has sometimes assisted in the safety of third parties does not create a continuing duty."[8]

In *Dixon*—a summary judgment case—a raceway sought dismissal in a wrongful death case and attached evidence that it had on a few prior occasions merely contacted local law enforcement agencies and informed them about certain upcoming events, and that law enforcement had, at their own discretion, provided traffic assistance.[9] The *Dixon* Court recognized that there was no dispute regarding any material fact as the non-movant failed to "introduce[] evidence to counter the Raceway's summary judgment proof" and only argued that because [the Raceway] had undertook a duty to provide traffic control at the scene of the accident on prior occasions, the Court should infer a duty in this instance.[10]

---

[6] [Id. at ¶ 15-36]

[7] [Id.]

[8] [Dkt No. 26, p. 13] [Dkt No. 27, p. 7 "even if the Defendants had worked in the past to control traffic near the facility, this does not mean that the Defendants agreed to do so in perpetuity."]

[9] *Id.* at 763.

[10] *Id.*

6

The Court disagreed, finding that the plaintiff had produced "no evidence to show that the Raceway undertook any duty to provide traffic control" at the time of the crash and the Raceway was "not under a duty to contact the local law enforcement authorities on this occasion simply because they had done so on previous occasions."[11]

Likewise, in *Garrett v. Houston Raceway Park*—another summary judgment case cited by Defendants—the undisputed evidence was that the raceway "had not undertaken a duty to provide traffic control" at the time of the crash, even though it had done so on a few prior occasions.[12]

But unlike both of those cases, Mrs. Venegas does not allege that Defendants had an on-going duty simply because they had taken some steps to address traffic control on a few prior occasions.

Mrs. Venegas described numerous on-going duties that Defendants were undertaking on SH 4 during the expansion in 2019-2020. Defendants' agents were tasked with virtually every aspect of monitoring, controlling, and assisting drivers during the unloading process.[13] These on-going efforts at the access point included patrolling, monitoring and directing traffic, escorting deliveries, communicating with drivers, and assisting drivers on parking, relocating, and delivering goods.[14] It is plausible Defendants undertook these efforts because they had been warned repeatedly that conditions at the access point were dangerous.[15]

This is not a summary judgment motion akin to the cases cited by Defendants, and making factual findings regarding disputed factual contentions is not appropriate at the pleading stage. These facts, when accepted in their entirety as true and viewed in the light most favorable to Mrs. Venegas is more than sufficient to support a "plausible" claim that Defendants were undertaking

---

[11] *Id.*

[12] 1996 Tex. App. LEXIS 2597, * (Tex. App.—Houston [14th Dist.] June 27, 1996), no writ.

[13] [Id. at ¶ 15-36]

[14] [Id.]

[15] [Id. at ¶ 22-27]

7

actions to make-safe a known, unsafe condition at the access point. They owed Mrs. Venegas a duty.

### C. *Vasquez v. Legend Natural Gas III, LP*

Defendants continue to claim that the entire area of the crash was public property (which Mrs. Venegas disputes and is currently unknown because Defendants refuse to answer discovery), and therefore, Defendants contend that the crash on allegedly public property is a "get-out-of-jail" free card at the pleading stage. Even if this were true—which it is not—such would not prevent a duty of care.

*Vasquez v. Legend Natural Gas* is instructive. In *Vasquez,* a widow brought suit against private companies that owned and operated oil and gas wells in an area around a public road on which the widow's husband was killed.[16] The widow complained that defendants' driving on the public road around defendants' property had damaged the road, which resulted in the crash that killed her husband. The sole issue on appeal is whether the private companies had a duty to fix the damaged conditions their driving created.[17]

The Court concluded no duty existed as there was no "allegation that the county delegated its maintenance and repair functions to Appellees **or that Appellees gratuitously assumed those functions**."[18] The *Vasquez* Court cited *Guerra v. Rodriguez*[19] and *Fort Bend County Drainage District v. Sbrusch*,[20] in concluding that "One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."

Unlike the widow's pleading in *Vasquez,* Mrs. Venegas, in this case, plead that Defendants gratuitously assumed the functions of managing and controlling the delivery process at the access

---

[16] 492 S.W.3d 448, 449 (Tex. App.—San Antonio 2016, no pet.).

[17] *Id.*

[18] *Id.* at 454.

[19] 239 S.W.2d 915, 917 (Tex. Civ. App.—San Antonio 1951, no writ).

[20] 818 S.W.2d 392, 396 (Tex. 1991).

point regardless of who owned the access point, and therefore, there is a plausible claim at the pleading stage to support a duty of care on this basis.

>  II. **Defendants owed a duty because they retained the right to control the driver's actions at the access point and it was foreseeable that nighttime deliveries at this location were dangerous to motorists traveling on SH 4 at night.**
>
>> A. **Several factual disputes exist that must be resolved at the pleading stage in Mrs. Venegas's favor.**

Defendants conclude that the truck involved in the crash was driven by an independent contractor that acted alone, without Defendants' control, and outside their premises.[21] Judge Morgan agreed and also appears to assume Defendants exercised no control over this driver, and Defendants had no reason to doubt the competence of the driver.[22]

But these conclusions are found nowhere in Plaintiff's First Amended Complaint, which is the only document relevant to this Motion. The term "independent contractor" is found nowhere in the First Amended Complaint. Neither is a description that the accident occurred entirely on public roadways or that Defendants had no control over the driver. These facts were inferred improperly and were not viewed in the light most favorable to Mrs. Venegas.

Most importantly, these facts conflict with the First Amended Complaint itself, as Mrs. Venegas plead that Defendants' agents assisted with every aspect of the delivery and unloading process, so the driver did not operate alone and outside Defendants' control.[23] Said another way, the driver was working for and with Defendants during this delivery,[24] but simply could not access

---

[21] [Dkt No. 26, p. 14]

[22] [Dkt No. 27, p. 10]

[23] [Id. at ¶ 16, 20 "SpaceX tasked SOS Security with monitoring and directing traffic and communicating with delivery drivers regularly on SH 4 . . . Deliveries to SpaceX's facilities occurred around-the-clock, with SpaceX's internal security personnel and SOS Security personnel tasked with monitoring and controlling this traffic . . . SOS Security would assist these drivers on parking, re-locating, and delivering their goods."].

[24] It is believed that this driver had arrived some time before the crash and had parked until Defendants instructed him to unload his cargo. This theory is consistent with the allegations in the First Amended Complaint in paragraph 18. If true, this would mean that Defendants knew he had arrived, knew they were obligated to assist this driver, and simply failed to fulfill their duties to ensure the delivery occurred safely.

9

Defendants' facilities because he had been forced to unload at this spot under unsafe conditions at night.[25]

Mrs. Venegas allegations at the pleading stage should have been accepted in their entirety as true and viewed in the light most favorable to Mrs. Venegas. They were not.[26]

**B. A duty exists when a party "controls" the work of a third party.**

"Generally, there is no duty to control the conduct of third persons."[27] "This general rule does not apply when a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct.[28] A special relationship may exist between "an independent contractor and contractee under special circumstances,"[29] including when a contractee retains the right to control the contractor's work."[30] Therefore, "it must be shown that the contractee had authority to control the work of the independent contractor.[31]

This duty imposed on third parties also requires that "before liability will be imposed, there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim."[32] "Absent such a showing, a defendant is absolved of liability."[33]

The application to this case is that even if the driver was an independent contractor (a fact that has not been discovered), if Defendants had authority to control the driver's work during the

---

[25] [Dkt No. 19, ¶ 13-36]

[26] [Dkt No. 27, p. 8]

[27] *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990) (citing *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983).

[28] *Id.*

[29] *Id.* (citing *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 20 (Tex. 1987).

[30] *Id.*

[31] *Id.*

[32] *Id.* at 526 (The Texas Supreme Court has adopted the Palsgraf rule, recognized in *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339 (N.Y. 1928), which states "the risk reasonably to be perceived defines the duty to be obeyed."

[33] *Id.*

unloading process and the unloading process itself created a foreseeable risk to motorists traveling at night along SH 4, then it is plausible that Defendants had a duty to make the delivery process safe at the access point to avoid foreseeable crashes.

### C. Mrs. Venegas plead the elements of "control" and "foreseeability" sufficient to support a plausible duty of care.

In this case, Defendants claim that the driver was an independent contractor, operating without any oversight by Defendants.[34] Judge Morgan concluded the driver was not an employee of Defendants.[35] Noticeably absent is any analysis of whether Defendants had authority to control the driver's conduct during the unloading process.

Judge Morgan also appeared to conclude that stalling a truck across the road in the middle of the night, without lights, on a dark highway is not a foreseeable risk to motorists.[36] This is not a conclusion reached in the light most favorable to Mrs. Venegas. Quite the opposite.

But also, Mrs. Venegas plead that Defendants controlled the delivery and unloading process at the access point, as described above. She plead that Defendants and their agents oversaw the delivery and unloading process,[37] including directing and assisting drivers on parking, relocating, and delivering their goods from the time they arrived outside Defendants' control center on SH 4 until they dropped off their deliveries.[38]

Mrs. Venegas also plead that Defendants' delivery process at night was dangerous, and Defendants knew this.[39] Mrs. Venegas plead that the delivery process at the access point was

---

[34] [Dkt No. 26, p. 1]

[35] [Dkt No, 27, p. 2]

[36] [Dkt No. 27, p. 10 ("any reasonable driver would know they needed to be aware of other traffic on the road, including stopped or stalled vehicles.")]

[37] [Dkt No. 19, ¶ 15-36]

[38] [Id. at ¶ 18]

[39] [Id. at ¶ 27]

11

creating "reasonable and foreseeable" risks to beach-goers/motorists traveling on SH 4.[40] In fact, Defendants' agents were notifying Defendants that the conditions around the access point were unsafe for deliveries, and the agents were told to "shut up about it" even while Defendants appear to have acted to control the delivery process.[41]

Therefore, taking all facts as true and in the light most favorable to Mrs. Venegas, she plead a plausible claim that Defendants owed the Venegas family a duty of care because they retained the right to control the driver's delivery at the access point, had control over the work performed by the driver and knew that the delivery process was posing a danger to local beach-goers at night.

### D. *Naumann v. Windsor* is Distinguishable.

Defendants rely on *Naumann* as a sort of "game-over" case, but this summary judgment case is clearly distinguishable and unhelpful.

In *Naumann,* a summary judgment case, the undisputed evidence established that a truck had unloaded its cargo, left the sheetrock plant, traveled 264 feet down an adjacent public road, and was attempting to turn onto an entirely different public road when a crash occurred.[42] The *Naumann* court concluded that the defendant had no control over the driver and was a "mere bystander,"[43] and "situation here was not created by Windsor" because it was not responsible for the road two streets away where the crash occurred nor was it responsible for the length of the truck.[44]

In the case at hand, this was not a crash that happened two streets away from the plant. This was a crash that occurred at the entrance to Defendants' private facilities, where a truck was

---

[40] [Id. at. 19, ¶ 25]

[41] [Dkt No. 19, ¶ 27]

[42] 749 S.W.2d 189, 190 (Tex.App.—San Antonio 1988, no writ).

[43] *Id.* at 191-92 ("It is uncontroverted that once Marsh left Windsor's property, Windsor had no control over him." . . . . A mere bystander who did not create the dangerous situation is not required to take action to and prevent injury to others.").

[44] *Id.* at 192.

sticking only half-way out on the road.[45]



[46]

The truck was in an access point between a private entrance (LBJ, which is the private entrance to SpaceX's control facility)[47] and SH 4.

Defendants were not innocent bystanders with no role in a crash that occurred on a completely separate public road. Defendants were involved in this delivery and had systematic duties to assist this driver in unloading.[48] Lastly, Defendants' property was inaccessible safely at night, resulting in the dangerous condition that caused this crash.[49] Defendants created this unsafe condition by allowing nighttime deliveries through an entrance in the dark that resulted in a driver being unable to access Defendants' facilities.[50] Taking every fact in favor of Mrs. Venegas and assuming all of her allegations as true, Mrs. Venegas plead a plausible claim at the pleading stage that is significantly distinguishable from the undisputed summary judgment facts in *Naumann*.

### III. Defendants owed a duty because they created unsafe conditions at the Access Point sufficient to impose a duty of care.

---

[45] [Dkt No. 19, ¶ 32]

[46] [Id]

[47] [Dkt No. 19, ¶ 11]

[48] See citations above.

[49] [Dkt No. 19, ¶ 30-31]

[50] [Id. at ¶ 25]

13

"An owner or occupant of premises abutting a highway must exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage or travel, and the owner or occupant is liable for any injury that proximately results from his wrongful acts in this respect."[51] Therefore, if a party owns property with unsafe conditions in close proximity to a public road and the unsafe conditions "could endanger the safety of persons using a public road," the party "owe[s] the duty to exercise reasonable care to avoid endangering the safety of persons using the road."[52]

Defendants are misconstruing that the only danger present was an independent contractor blocking a public street on a dark morning. Mrs. Venegas is not arguing that the truck is the only obscure danger. She alleges that the entrance to Defendants' property was impassable safely at night by trucks backing into the entrance, which is dangerous and posed a risk to motorists traveling on an adjoining highway.[53] The entrance had been designed pre-expansion for virtually no traffic[54] and had previously led to quiet Boca Chica Village, now owned by Defendants.[55] This danger resulted in a truck being stranded half-way into the roadway.

Defendants attempt to limit the application of this rule to cases where unsafe conditions obscured visibility on an abutting public road (i.e. trees, tall grass, etc.).[56] Mrs. Venegas does not dispute that cases exist applying this rule in instances where a property condition creates visibility hazards to traveling motorists; visibility hazards would seem to be the most common hazard to motorists. But no such case limits this rule only to unsafe conditions that create visibility hazards

---

[51] *In re TPCO Am. Corp.,* 2018 Tex. App. LEXIS 2566 at *11 and *Alamo Nat'l Bank,* 616 S.W.2d at 910; *Atchison v. Texas & P.R. Co.*, 143 Tex. 466, 469 (Tex. 1945).

[52] *Atchison*, 143 Tex. at 458.

[53] [Dkt No. 19, ¶ 25]

[54] [Id. ¶ 13]

[55] [Id. at ¶ 7-10]

[56] [Dkt No. 26, p. 10]

14

to motorists on adjoining highways, and such an interpretation would allow property owners who create other unsafe conditions to motorists traveling on abutting highways to avoid liability altogether.

Defendants and Judge Morgan respectfully miss the actual hazard of Defendants' property created to the Venegas family traveling on SH 4. Mrs. Venegas explained specifically that it was reasonable and foreseeable that these deliveries occurring at this location were unsafe at night because the conditions at the access point were such that drivers could not access Defendants' property safely at night which would result in the effect noted by the Court—a stranded truck.[57]

This is not a danger created by the government. This is not a danger created by the driver. This is not a danger present during the day. This is a danger that Defendants created when they insisted on deliveries in the dark, at one location, and under the circumstances that necessarily required a truck to be stranded across a roadway unbeknownst to motorist who cannot see the truck.[58] Therefore, Mrs. Venegas has properly articulated a danger Defendants created that resulted in the conditions that caused the crash. Such is sufficient to support a plausible duty of care.

**IV. Mrs. Venegas requests leave to amend if this Court finds that her allegations fail to comply with Rule 8 and do not articulate a basis for relief.**

Federal Rule of Civil Procedure 15(a) indicates that "a court should freely give leave when justice so requires," and a court determining whether to grant leave should consider several factors including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice, and futility of the amendments."[59] None of these factors are present here, and Mrs. Venegas has not amended her pleading after the filing of this Motion.

---

[57] [Dkt No. 19, ¶ 23, 25, seq.]

[58] [Id. at ¶ 24]

[59] *Jones v. Southern Univ.,* 834 Fed. Appx. 919, 922 (5th Cir. 2020).

15

While Mrs. Venegas believes she has plead a short and plain statement sufficient to satisfy her obligations under Rule 8, should this Court disagree, Mrs. Venegas requests leave to amend her First Amended Complaint to plead with particularity the circumstances to support the bases described herein.

### CONCLUSION AND PRAYER

For the aforementioned reasons, Mrs. Venegas respectfully requests this Court sustain her objections to the report and recommnedation and deny Defendants' Motion to Dismiss. If this Court should finds that Mrs. Venegas's First Amended Complaint fails to include sufficient facts to support her contentions discussed herein, Mrs. Venegas requests leave to amend her pleading to further describe facts to support the bases described herein. Mrs. Venegas further requests all other relief to which it may show itself entitled.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: /s/ *Anthony G. Buzbee*
Anthony G. Buzbee
Texas Bar No. 24001820
S.D. Tex. Bar No. 22679
tbuzbee@txattorneys.com
David L. Bergen
Texas Bar No. 24097371
S.D. Tex. Bar. No. 2858355
dbergen@txattorneys.com
Brittany C. Ifejika
Texas Bar No. 241110011
S.D. Tex. Bar No. 3651372
bifejika@txattorneys.com
J.P. Morgan Chase Tower
600 Travis, Suite 7300
Houston, Texas 77002
Telephone: (713) 223-5393
Facsimile: (713) 223-5909
www.txattorneys.com

**Attorneys For Plaintiff
Lucinne Venegas**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was served by electronic-filing in compliance with the Federal Rules of Civil Procedure on or about December 5, 2022.

Michelle D. Pector
Texas Bar No. 24027726
S.D. Tex. Bar No. 28869
Michelle.pector@morganlewis.com
Jared Wilkerson
Texas Bar No. 24084096
S.D. Tex. Bar No. 2117319
Jared.wilkerson@morganlewis.com
Morgan, Lewis & Bockius, LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
Tel: 713.890-5000
Fax: 713.890.5001

David G. Oliveira
Tex. Bar No. 15254675
doliveira@rofllp.com
Rene O. Oliveira
Tex. Bar No. 24099137
roliveirajr@rofllp.com
Roerig, Oliveira & Fisher, LLP
10225 N. 10th Street
McAllen, Texas 78504
Tel: 956-393-6300
Fax: 956-386-1625

**Attorneys For Defendants**

/s/ *Anthony G. Buzbee*
       Anthony G. Buzbee